## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

FUNDAMENTAL LONG TERM CARE, INC.                     Case No.: 8:11-bk-22258-MGW
                                                     Chapter 7

      Debtor.

_____/

The ESTATE OF JUANITA AMELIA JACKSON, By
and through CATHY JACKSON-PLATTS, f/k/a
CATHERINE WHATLEY, Personal Representative;
The ESTATE OF ELVIRA NUNZIATA, by and
through RICHARD NUNZIATA, Personal
Representative; The ESTATE OF JOSEPH WEBB, by
and through ROSE M. WEBB, Personal
Representative; The ESTATE OF ARLENE ANN
TOWNSEND, by and through BRENDA S.
SHATTUCK, Personal Representative; The ESTATE
OF OPAL LEE SASSER, by and through WANDA
KAY MUSSELWHITE, Personal Representative; and
The ESTATE OF JAMES HENRY JONES, by and
through FRANCINA SPIVERY-JONES,
Administratrix,

      Plaintiffs,
                                                     Adv. Pro. No: 8:13-ap-00893-MGW
v.

GENERAL ELECTRIC CAPITAL CORPORATION;
FUNDAMENTAL ADMINISTRATIVE SERVICES,
LLC; THI OF BALTIMORE, INC.; FUNDAMENTAL
LONG TERM CARE HOLDINGS, LLC; MURRAY
FORMAN; LEONARD GRUNSTEIN; RUBIN
SCHRON; VENTAS, INC.; VENTAS REALTY,
LIMITED PARTNERSHIP; GTCR GOLDER
RAUNER, LLC; GTCR FUND VI, L.P.; GTCR
PARTNERS VI, L.P.; GTCR VI EXECUTIVE FUND,
L.P.; GTCR ASSOCIATES VI; EDGAR D.
JANNOTTA, JR.; and THI HOLDINGS, LLC,

      Defendants.

_____/

## RUBIN SCHRON'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................................... 1

Background ...................................................................................................................... 4

      The THI and Fundamental Companies .............................................................. 4

      Schron Has No Ownership or Control Over Any Fundamental Entity .......... 6

Standard of Review .......................................................................................................... 8

Argument .......................................................................................................................... 9

POINT I    The Wilkes Claimants Fail to State a Claim that Schron is an Alter
            Ego of THI, THMI, or the Debtor ................................................................. 10

POINT II   The Wilkes Claimants Fail to State a Claim that Schron is a Successor-
            In-Interest to THI, THMI, or the Debtor ....................................................... 14

Conclusion ..................................................................................................................... 20

# TABLE OF AUTHORITIES

CASES

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ........................................................................8

*Bernard v. Kee Mfg. Co.*,
  409 So.2d 1047 (Fla. 1982)..............................................................................16

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
  491 B.R. 335 (S.D.N.Y. 2013)......................................................................11, 14

*Default Proof Credit Card Sys., Inc. v. Friedland*,
  992 So.2d 442 (Fla. 3d DCA 2008) ..................................................................15

*Elmer v. Tenneco*,
  698 F. Supp. 535 (D. Del. 1988) ...................................................................15, 16

*Fountain v. Colonial Chevrolet Co.*,
  1988 WL 40019 (Del. Super. Apr. 13, 1988) .....................................................17

*Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC*,
  20 N.Y. 3d 438 (2013) ................................................................................7, 13

*Griffin Indus., Inc. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007) .........................................................................9

*In re BH S & B Holdings LLC*,
  420 B.R. 112 (Bankr. S.D.N.Y. 2009)...............................................7, 9, 10, 11

*In re Ernie Haire Ford, Inc.*,
  459 B.R. 824 (Bankr. M.D. Fla. 2011) ...............................................................8

*In re Heritage Org.*,
  413 B.R. 438 (Bankr. N.D. Tex. 2009)..............................................................14

*In re Nat'l Pipe & Plastics, Inc.*,
  No. 96-1676 (PWJ), 2000 WL 33712292 (Bankr. D. Del. Sept. 25, 2000)..............15, 16

*In re Opus East, LLC*,
  480 B.R. 561 (Bankr. D. Del. 2012) .......................................................... *passim*

*In re Ticketplanet.com*,
  313 B.R. 46 (Bankr. S.D.N.Y. 2004)................................................................11

*In re Titan Cruise Lines*,
    353 B.R. 919 (Bankr. M.D. Fla. 2006) .................................................................15

*In re Tronox, Inc. Securities Litig.*,
    769 F.Supp.2d 202 (S.D.N.Y. 2011).............................................................16, 19

*In re World Vision Entm't, Inc.*,
    275 B.R. 641 (Bankr. M.D. Fla. 2002) .................................................................10

*Int'l Ins. Co. v. Johns*,
    874 F.2d 1447 (11th Cir. 1989) ...........................................................................10

*Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs, Inc.*,
    No. S11 C-04-013-ESB, 2011 WL 4826106 (Del. Super. Sept. 19, 2011) .......18, 19

*Maine State Retirement Syst. v. Countrywide Fin. Corp.*,
    No. 1:10-cv-0302 MRP, 2011 WL 1765509 (C.D. Cal. Apr. 20, 2011) ................18

*Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*,
    761 So. 2d 306, 311 (Fla. 2000)..........................................................................15

*Molinos Valle del Cibao, C. por A., v. Lama*,
    633 F.3d 1330, 1350 (11th Cir. 2011) ............................................................13, 14

*Munim v. Azar*,
    648 So.2d 145 (Fla. 4th DCA 1994) ....................................................................18

*Redman v. Cobb Intern., Inc.*,
    23 F.Supp.2d 1372 (M.D. Fla. 1998) ...................................................................17

*Ross v. Desa Holdings Corp.*,
    C.A. No. 05C-05-013 MMJ, 2008 WL 4899226 (Del. Super. Sept. 30, 2008) ......17

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
    -- F.Supp. 2d ---, 2013 WL 4932544 (S.D.N.Y. Sept. 10, 2013)...........................18

*Trevino v. Merscorp, Inc.*,
    583 F.Supp. 2d 521 (D. Del 2008).......................................................................11

*Walton Const. Co. v. Corus Bank*,
    No. 4:10-CV-137-SPM-WCS, 2011 WL 2938366 (N.D. Fla. July 21, 2011)........10

*Wells v. Raymark Indus., Inc.*,
    No. 84-11-civ-J-14, 1985 WL 6638 (M.D. Fla. Mar. 13, 1985)............................15

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ........................................................................................................................19

Rubin Schron ("Schron"), by and through his attorneys, submits this memorandum of law in support of his motion to dismiss the Complaint filed by the Estates of Juanita Amelia Jackson, Elvira Nunziata, Joseph Webb, Arlene Anne Townsend, Opal Lee Sasser, and James Henry Jones (collectively, the "Wilkes Claimants") and states as follows.

### Introduction

1.      This Complaint is one more meritless attempt by the Wilkes Claimants to enforce massive default judgments against third party entities and individuals who have no intelligible connection to the underlying claims or to the original defendants.  The Wilkes Claimants ask the Court to declare that sixteen separate individuals and companies, including Schron, are somehow all alter egos of Fundamental Long Term Care, Inc. (the "Debtor"), Trans Health Management, Inc. ("THMI"), and Trans Healthcare Inc. ("THI").  They also ask the Court to declare that several individuals and businesses whom they lump together as "the Fundamental Enterprise" are all successors-in-interest to the separate businesses of THI of Baltimore, Inc. ("THIB"), THMI, and THI, likewise lumped together and termed "the THI Enterprise."

2.      Schron is a New York real estate investor.  *See* Compl. ¶ 50.  He has no contractual relationship with either the Debtor or THMI.  In fact, neither Schron nor any company owned or controlled by him has ever had any contractual relationship or received anything of value from either the Debtor or THMI.  Plaintiffs have named him as a defendant solely because they regard him as one more deep pocket against whom

they wish to collect upon the $2 billion in unenforceable default judgments won against these undefended defunct companies.

3.     Schron's only conceivable connection to any Trans Health or Fundamental company arises from indirect contractual relationships between two companies he manages (but does not own) and Defendants THIB and Fundamental Long Term Care Holdings, LLC ("FLTCH"). Schron is the manager of SWC Property Holdings LLC ("SWC"), whose subsidiaries are landlords to subsidiaries of THIB pursuant to leases entered into in 2003. Schron is also the manager of Cammeby's Funding LLC ("Cam Funding"), which held an option to purchase one-third of the equity of FLTCH. In 2010, Cam Funding assigned that option to another company, Quality Healthcare Services, LLC ("QHS"), which is not owned or controlled by Schron. Litigation followed, and neither Cam Funding nor QHS to date has received any equity in FLTCH.

4.     This Court is familiar with Plaintiffs' efforts to drag Schron and others into lawsuits concerning the actions of others. After obtaining massive default judgments against THMI and THI, the Wilkes Claimants sought to implead the sixteen so-called "targets" in post-judgment proceedings under Fla. Stat. § 56.29.[1] In one case, they simply "added" the targets to the judgment without notice or other due process.

5.     First, in December 2010, the Estate of Jackson impleaded Schron following entry of a $110 million default judgment against THMI and THI. *See* Compl. ¶ 15. The Estate argued that Schron had received unidentified fraudulent transfers from

---

[1] Schron has contested the jurisdiction of the Florida courts in each of these cases. He moves to dismiss, consistent with the Federal Rules of Bankruptcy Procedure, but the filing of this motion does not waive any defenses, and Schron does not consent to jurisdiction in the State of Florida.

THMI and THI.  Schron filed a motion to dismiss for lack of personal jurisdiction, which is pending in federal court.  Case No. 8:10-cv-02937-VMC-TGW (M.D. Fla.).

6.     In August 2012, the Estate of Nunziata impleaded Schron following entry of a $200 million default judgment against THMI.  Schron filed a motion to dismiss for lack of personal jurisdiction.  At the initial hearing, before the Estate had even opposed the motion, the trial judge summarily denied it and entered an order "adding" Schron to the entire judgment, without making any factual findings in support.  The Second District Court of Appeal promptly stayed the judgment, and Schron's appeal remains pending.  Case Nos. 2D12-5355 & 2D12-5690 (Fla. 2d DCA).

7.     Also in August 2012, the Estate of Webb sought to implead Schron following entry of a $900 million default judgment against THI and THMI.  *See* Compl. ¶ 22.  Schron moved to dismiss for lack of personal jurisdiction.  The trial court recently postponed an evidentiary hearing on jurisdiction to await this Court's resolution of the pending stay motions.  Case No. 01-2006-CA-2418 (Fla. 8th Cir., Alachua Cnty.).

8.     In July 2013, in yet a fourth state court case, the Estate of Townsend moved to add Schron and the fifteen other targets to a $1.1 billion judgment against THI and THMI, alleging that they were the "real parties in interest" because of their participation in the January 5, 2012 Settlement Agreement with the Receiver for THI.  *See* Compl. ¶ 24.  Although the Townsend Estate did not serve Schron, or otherwise provide any notice, the trial court granted the motion.  The appellate court promptly stayed that judgment.  Case Nos. 2D13-3741 & 2D13-3742 (Fla. 2d DCA).

9.      The Wilkes Claimants have never explained what specific funds they believe Schron received from any of these companies.  Rather, Plaintiffs have responded to the complete absence of evidence with wild and often contradictory allegations, which are either completely false or describe events that have nothing to do with Schron.  Plaintiffs make profligate use of words such as "agent," "co-conspirator" and "alter ego," in an obvious effort to impute to Schron actions undertaken by others, for their own benefit, without Schron's knowledge or control.  This newest Complaint treads the same ground, and indeed, large segments have simply been cut and pasted from those prior complaints.  The Wilkes Claimants levy unfounded claims that have no basis in fact and no apparent relevance to their causes of action.

10.     All told, the Complaint fails to state any claim against Schron.  The assertion that he is jointly liable with fifteen others, including public and private companies and individuals, as alter egos of the Debtor, THMI, and THI, is frivolous.  Schron does not have, and has never had, any ownership or control over those companies.  Likewise, the claim that Schron is the successor-in-interest to companies admittedly owned by others is simply nonsensical.  The Complaint should be dismissed.

**Background**

**The THI and Fundamental Companies**

11.     THMI is a Delaware corporation formerly owned by THI.  Compl. ¶¶ 5-8, 72.  THI was a subsidiary of THI Holdings, LLC ("THIH"), which was, in turn, owned and controlled by GTCR.  *Id*. ¶¶ 32, 34.  Although each of these entities is a separate

company, the Wilkes Claimants refer to THI, THMI, and THIH interchangeably as the "THI Enterprise." *Id.* ¶¶ 31-34.

12.     In 2003, ABE Briarwood, Inc. ("ABE"), purchased assets and properties from IHS, a company in bankruptcy. *Id.* ¶ 115. While the Complaint contains the conclusory allegation that Schron "created" ABE, *id.*, it provides no factual support for that statement. The Complaint specifically does not allege that Schron ever owned or controlled ABE, because he never has. SWC did purchase some properties from ABE in 2003, and Cam Funding provided financing. *Id.* ¶ 117. The Complaint does not explain, however, how these 2003 transactions bear any relevance to the claims pled.

13.     In 2006, THI sold THMI to the Debtor for $100,000. *Id.* ¶ 249. The Wilkes Claimants do not allege that THI and the Debtor are or were under common ownership. Instead, the Wilkes Claimants state that THI was owned by THIH, *id.* ¶ 32, and that the Debtor was owned by Barry Saacks, *id.* ¶¶ 252-53, 283. The Wilkes Claimants do not allege that THI ceased doing business after selling THMI; they admit that THI remained in operation until 2009, when it entered receivership. *Id.* ¶ 348.

14.     In another 2006 transaction, THIH sold THIB to FLTCH for $10 million. *Id.* ¶ 267. The Wilkes Claimants do not allege that THIH and FLTCH are or were under common ownership. Instead, they state that THIH was owned by GTCR, *id.* ¶ 34, and that FLTCH was owned by Murray Forman and Leonard Grunstein, *id.* ¶¶ 274, 318.

15.     The Wilkes Claimants allege that Defendant Ned Jannotta "described" the Debtor's acquisition of THMI and FLTCH's acquisition of THIB as "linked transactions" and that Schron "controlled or invested in" the purchasers. *Id.* ¶ 273. The Wilkes

Claimants do not actually allege that this is true, just that Mr. Jannotta said it.  The Wilkes Claimants do not allege that Schron actually controlled or invested in the 2006 transactions, because he did not.  Indeed, the Wilkes Claimants assert elsewhere that the "transfer of assets" was planned at a meeting attended by "representatives from THI, GTCR, GECC, and Ventas."  *Id. ¶* 240.  They do not allege that Schron attended or had notice of this meeting.  Nor do they cite any facts suggesting that Schron or any company managed or controlled by him ever acquired the Debtor, THI or THMI.

### **Schron Has No Ownership or Control Over Any Fundamental Entity**

16.    The core of the Complaint against Schron is the false assertion that he is a one-third owner of FLTCH, and that therefore, he should be deemed one of the "Fundamental Defendants."  *See id.* ¶ 56 ("FLTCH is equally owned by Schron, and his agents, Forman and Grunstein.").  This naked allegation is not only false, but it conflicts with numerous other allegations in the Complaint.  Counsel for the Wilkes Claimants plainly cannot have a good faith belief in its truth.

17.    Indeed, the Complaint alleges in several places that FLTCH actually is a company owned and controlled by Forman and Grunstein:

- Forman and Grunstein are the "ultimate owners of the Fundamental family of companies."  *Id.* ¶ 274.

- FLTCH and its affiliates are operated together "as a single integrated enterprise controlled by Grunstein and Forman."  *Id.* ¶ 318.

- A federal court in New Mexico has found, "FLTCH is owned solely by Forman and Grunstein" who are "the only officers and directors of the company."  *Id.* ¶ 319(c).

18.     Other sources, of which the Court may take judicial notice, confirm that Grunstein and Forman own FLTCH, and Schron does not.

- The New York Court of Appeals has stated that Grunstein and Forman "formed Fundamental in December 2005" and are the "sole members of Fundamental." *Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC*, 20 N.Y. 3d 438, 441 (2013); *see also* Compl. ¶ 322 (citing *Fundamental* case).[2]

- The Wilkes Claimants have filed in the Florida state courts a sworn affidavit from Murray Forman stating that "Leonard Grunstein and I have been the members and the managers of [FLTCH] since it was formed in 2005" and "[n]either Schron nor any Schron affiliate contributed any funding to Fundamental's acquisition of [THIB]." Affidavit of Murray Forman ¶¶ 3, 7, *Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC*, No. 651332/2011 (N.Y. Sup. Ct., Apr. 14, 2011) (Exhibit A); *see, e.g.*, Am. Mtn. to Implead Rubin Schron, Ex. 33, *Webb v. THMI*, No. 06-CA-2418 (Fla. 8th Cir. Nov. 19, 2012); *see also* Rule 2004 Examination of Rubin Schron, Ex. 5 (Oct. 8, 2013).

- Murray Forman and Leonard Grunstein have both testified in Rule 2004 examinations that they are the sole owners of FLTCH.  Grunstein Tr. 43:17-44:17, Dec. 18, 2012 (Exhibit B); Forman Tr. 87:6-19, Dec. 19, 2012 (Exhibit C).

19.     Given that the Complaint conflicts with itself, the conclusory allegation that Schron is a one-third owner of FLTCH must be disregarded.  *In re BH S & B Holdings LLC*, 420 B.R. 112, 132-33 (Bankr. S.D.N.Y. 2009) ("Where an allegation in the complaint conflicts with other allegations . . . . the court is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true in deciding a motion to dismiss.").   The fact that Grunstein and Forman indisputably own FLTCH does not prove the Wilkes Claimants' case against them, but it assuredly does demonstrate that any claims against Schron premised on that allegation must fail.

---

[2]  In the same Opinion, the Court of Appeals also confirmed that Cam Funding held an option to acquire one-third of FLTCH, but that Cam Funding had "designat[ed] Quality Health Services, LLC to acquire the ownership interest . . . ." *Id.* at 443.

20.    The Wilkes Claimants make additional rambling allegations that have no bearing on their actual claims.  For example, they allege that Schron acquired real estate owned by Mariner Health Care, Inc. in a transaction that spurred a civil anti-kickback lawsuit.  Compl. ¶¶ 125, 128.  Those allegations are incorrect, but in any event, have no relevance to the claims here.  Likewise, the Wilkes Claimants allege that Schron created a "commercial mortgage-backed security" to sell to "the international investment community."  *Id.* ¶ 40.  This allegation is preposterous:  Schron is a real estate investor, not an investment bank.  His companies borrow money from lending institutions; they assuredly do not securitize mortgages.  In any case, the Wilkes Claimants do not explain how statements allegedly made in connection with selling mortgage-backed securities had any impact on the Debtor or any relevance to the alter ego claims in the Complaint.

## **Standard of Review**

21.    To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating a motion to dismiss, the court first "eliminate[s] any allegations in the complaint that are merely legal conclusions."  *Id.* at 1290 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 1295 S. Ct. 1937, 1950 (2009)).  "[W]here there are well-pleaded factual allegations," the court "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief."  *Id.*  As the Court has recognized, a complaint will state a claim only where it contains "sufficient factual allegations to nudge the claim for relief from the realm of

conceivable to plausible" and "[f]acts that are merely consistent with a defendant's potential liability are insufficient to accomplish this task." *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 835 (Bankr. M.D. Fla. 2011) (Williamson, J.).

22.     In evaluating a motion to dismiss, the Court may reject factual allegations that conflict with one another. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."); *In re BH S & B Holdings*, 420 B.R. at 132-33 ("Where an allegation in the complaint conflicts with other allegations . . . . the court is [not] obligated to . . . accept the allegation in the pleadings as true in deciding a motion to dismiss.").

23.     Many of the allegations in the Wilkes Claimants' newest Complaint conflict with each other.   Even taken as correct, none of the allegations connects Schron to the Debtor, THMI, or THI in any intelligible, let alone plausible, way.

### Argument

24.     The Wilkes Claimants provide no basis for this Court to conclude that Schron is responsible for the liabilities of the Debtor, THMI, or THI.   Schron is not alleged ever to have owned or controlled any of those companies.   While one paragraph alleges that Schron is an upstream owner of one-third of FLTCH, that allegation conflicts with several other assertions in the Complaint, and in any event, provides no foundation for concluding that Schron is an alter ego or successor-in-interest to the Debtor, THMI or THI.   There are simply no allegations in the Complaint that support such claims.

## POINT I

## THE WILKES CLAIMANTS FAIL TO STATE A CLAIM THAT SCHRON IS AN ALTER EGO OF THI, THMI, OR THE DEBTOR

25.     The Wilkes Claimants fail to state a claim that Schron is liable for the debts of THMI or the Debtor based on the remarkable theory that Schron and fifteen other defendants are all alter egos of THI, THMI, and the Debtor, and that accordingly, "it would be proper to pierce the corporate veils."  Compl. ¶ 522.  Schron owns no equity in THI, THMI, the Debtor, or **any** of the Defendants and has no ability to control any of those companies.  The Wilkes Claimants do not identify any corporate veil that stands between Schron and any of these companies, much less one that could be pierced.

26.     "The decision whether to pierce the corporate veil is a question of state law."  *In re World Vision Entm't, Inc.*, 275 B.R. 641, 661 (Bankr. M.D. Fla. 2002).  Under Florida choice of law principles, the law of the state of incorporation applies to veil-piercing claims.  *Walton Const. Co. v. Corus Bank*, No. 4:10-CV-137-SPM-WCS, 2011 WL 2938366, at *2 (N.D. Fla. July 21, 2011) ("Because Funding is a limited liability company that is incorporated under the laws of Delaware, this Court applies Delaware law on the question of piercing the corporate veil"); *see also Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989).  The Wilkes Claimants seek to pierce the veil of Delaware LLC's, Compl. ¶¶ 5, 7, and thus, Delaware law applies.[3]

27.     In order to pierce the corporate veil, the Wilkes Claimants must show "(1) that the corporation and its shareholders operated as a single economic entity and (2) that an overall element of injustice or unfairness is present.'" *In re Opus East, LLC*, 480 B.R.

---

[3]  There would be no difference, even if Florida law applies.  *See infra* ¶¶ 33-34.

561, 570 (Bankr. D. Del. 2012));  *In re BH S & B Holdings*, 420 B.R. at 133-34 (same).

Whether an operation is a "single economic entity" depends on the following factors:

> (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*In re Opus East*, 480 B.R. at 570; *In re BH S & B Holdings*, 420 B.R. at 134.  Notably, "[i]t is not sufficient at the pleading stage to make conclusory allegations of control."  *In re Ticketplanet.com*, 313 B.R. 46, 70 (Bankr. S.D.N.Y. 2004) (applying Delaware law); *see also Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013) (applying Delaware law) ("[C]onclusory allegations of dominance and control will not suffice to defeat a motion to dismiss.").

28.      A plaintiff must also establish "injustice or unfairness" in "the defendants' use of the corporate form."  *In re BH S & B Holdings, LLC*, 420 B.R. at 134.  "To survive a motion to dismiss, a plaintiff must allege facts that the controlling owners operated the company as an 'incorporated pocketbook' and used the corporate form to shield themselves from liability."  *Id*.  The injustice must arise specifically from the use of the corporate form and not from the underlying cause of action.  *See, e.g.*, *id.* at 142 (allegation of "deception of creditors concerning the Debtor's plans and prospects for operating as a going concern" was insufficient); *Trevino*, 583 F.Supp.2d at 530 ("[T]he possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil."); *In re Ticketplanet.com*, 313 B.R. at 71 (allegation that Debtor was a "tool to further Defendants' interests" was insufficient).

29.     The Wilkes Claimants do not plead any facts supporting their claims that all of the Defendants are alter egos of THI, THMI, and the Debtor, Compl. ¶¶ 526, 533, and that they all "dominated and controlled [FLTCI,] THI and THMI to the extent that their independence was . . . non-existent." *Id.*   To survive a motion to dismiss, the Wilkes Claimants would have to cite facts ***plausibly*** suggesting that the sixteen Defendants—including a public corporation, a private company, private equity funds, real estate investment trusts, and several individuals—operated as a single economic entity.   That claim is implausible on its face.

30.     The Wilkes Claimants offer only generic allegations that ***all*** of the fifteen Defendants "organized and used" THI and THMI in order to "loot[] the assets of THI and THMI and conceal[] them in newly created companies."   Compl. ¶ 528.   Likewise, they assert that ***all*** of the fifteen Defendants "created and used" FLTCI to "avoid[] and defeat[] the liabilities of THI and THMI." *Id.* ¶ 534.   Finally, ***all*** fifteen Defendants were allegedly "closely aligned in . . . directing litigation against THI and THMI." *Id.* ¶ 557. These conclusory allegations fail to state a claim.   Not a single factual allegation suggests that Schron took any action to "organize," "create," or "use" any of these companies.

31.     The Wilkes Claimants similarly allege no facts suggesting that Schron was a shareholder of the Debtor, THI, or THMI, much less that he operated as a "single economic entity" with those companies.   The Complaint does not allege that Schron was a dominant shareholder who "siphon[ed] the corporation's funds," or that he used "the corporation as a façade" for his operations as the dominant shareholder. *E.g.*, *In re Opus East*, 480 B.R. at 570.   Schron was not a shareholder of any of those companies, much

12

less a dominant one, and the Wilkes Claimants do not identify any transfers from THI, THMI, or the Debtor to Schron at all.

32.    Finally, any "failure to observe corporate formalities," *id.*, could only exist between the Debtor, THMI, THI, and their respective owners.  But the Wilkes Claimants do not contend that Schron is or was an owner.  No facts in the complaint support the theory that he acted as a "single economic entity" with the Debtor, THI, or THMI.

33.    Florida law would compel the same result.  In a similar case, the Eleventh Circuit rejected claims that an individual was the alter egos of two companies, where the plaintiff did not allege that the defendant owned any stock in those companies.  *Molinos Valle del Cibao, C. por A., v. Lama*, 633 F.3d 1330, 1350 (11th Cir. 2011).  The defendant was a director and owned stock in a parent corporation several steps removed. *Id.* at 1350 n.21.  Recognizing the Florida courts' "emphasis on ownership," the Court ruled that the plaintiff could not "pierce the corporate veil against a non-shareholder director" but instead should have sued the companies' parent corporation.  *Id.* at 1351.

34.    The Wilkes Claimants also fail to allege facts suggesting that Schron was an alter ego of any of the other Defendants.  As noted above, the Complaint alleges in numerous places that FLTCH is owned and controlled by Grunstein and Forman, *see* Compl. ¶¶ 274, 318, 319(c), an undisputed fact that has also been recognized by New York's highest court.  *Fundamental Long Term Care Holdings*, 20 N.Y. 3d at 441.  The Complaint's naked allegation that Schron has a one-third ownership of FLTCH conflicts with these other allegations, is an outright falsehood, and should be disregarded.  *Id.* ¶ 56.

35.    In any event, even if the Wilkes Claimants could make such an allegation, Schron's alleged one-third interest in FLTCH would not support an alter ego or veil-piercing claim for FLTCH, much less the Debtor, THMI, or THI.  Where a Defendant "does not have any **controlling** interest in the [company]," the Claimants "fail[] to state a cause of action to pierce the corporate veil."  *In re Opus East, LLC*, 480 B.R. at 570 (emphasis added).  Accordingly, the allegation that Schron was a minority owner of FLTCH, if Plaintiffs could make it, would fail to state a claim.  And Plaintiffs make no allegation that Schron owns any interest—minority or controlling—in any other Defendant, much less that he abused any of their corporate forms.[4]

## POINT II

### THE WILKES CLAIMANTS FAIL TO STATE A CLAIM THAT SCHRON IS A SUCCESSOR-IN-INTEREST TO THI, THMI, OR THE DEBTOR

36.    The Wilkes Claimants also fail to state a claim against Schron as a successor-in-interest of THI, THMI, or the Debtor.  The Wilkes Claimants purport to assert three theories of successor liability:  "(1) the Fundamental enterprise is a mere continuation of the THI enterprise; (2) the merger of the THI enterprise into the Fundamental enterprise was a *de facto* merger; (3) and that the 2006 transaction wherein the stock and liabilities of THMI were sold to FLTCI and the assets of the THI enterprise

---

[4]  As noted, even if Schron was a minority owner of FLTCH, that fact would not support piercing the veil of the Debtor, THMI, or THI.  *See Capmark Fin. Grp. Inc.*, 491 B.R. at 349 ("Where a plaintiff seeks to disregard the corporate formalities separating horizontal affiliates. . . the veils separating each entity from the shared corporate parent must be pierced.") (citing cases); *In re Heritage Org.*, 413 B.R. 438, 514-15 (Bankr. N.D. Tex. 2009) (applying Delaware law and holding that the veil piercing test "does not work on . . . a global basis" but "must be applied to, and satisfied at, each level or layer of ownership"); *see also Molinos*, 633 F.3d at 1351 n.23.  The Complaint contains no allegations that FLTCH is an alter ego of any of those other companies, which are owned by others.  *E.g.*, Compl. ¶¶ 6, 8, 32, 42, 231, 252.

were sold to FLTCH was a fraudulent effort to avoid the liabilities of the THI enterprise."
Compl. ¶ 505.  None of these theories provides a basis for liability against Schron.

37.     The Wilkes Claimants' successor liability claims are governed by
Delaware law.  This Court applies the conflicts rules of Florida when addressing non-
bankruptcy issues, *see In re Titan Cruise Lines*, 353 B.R. 919, 923 (Bankr. M.D. Fla.
2006), and Florida courts enforce choice of law provisions in contracts "unless the law of
the foreign state contravenes the strong public policy of Florida or is unjust or
unreasonable."  *Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So.2d 442, 444
(Fla. 3d DCA 2008); *see also Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*,
761 So.2d 306, 311 (Fla. 2000).  When evaluating a successor liability claim, Florida
courts will follow the law provided by the contract at issue.  *Wells v. Raymark Indus.,
Inc.*, No. 84-11-civ-J-14, 1985 WL 6638, at *1 (M.D. Fla. Mar. 13, 1985) (applying law
chosen in purchase agreement to successor liability claims).  Here, all relevant purchase
agreements select Delaware law.  THMI Stock Purchase Agreement § 13I (Ex. D)
(Delaware choice of law clause); THIB Stock Purchase Agreement § 13I (Ex. E) (same).

38.     Under Delaware law, "a company that purchases the assets of another
company does not take on the liabilities of the seller company."  *In re Nat'l Pipe &
Plastics, Inc.*, No. 96-1676 (PWJ), 2000 WL 33712292, at *6 (Bankr. D. Del. Sept. 25,
2000); *see also, e.g.*, *Elmer v. Tenneco*, 698 F. Supp. 535, 540 (D. Del. 1988).  A
purchaser may liable for the debts of the seller only if: "(1) the purchaser expressly or
impliedly assumes such liabilities; (2) the transaction amounts to a consolidation or

merger of the seller into the purchaser; (3) the purchaser is merely a continuation of the seller; or (4) the transaction has been fraudulently entered." *Elmer,* 698 F. Supp. at 540.[5]

39.     Schron is plainly not a successor company, and the Complaint does not allege that Schron personally purchased the assets of the Debtor, THI, or THMI. Therefore, he plainly cannot be liable as a successor to those companies.  Schron likewise has no ownership of FLTCH, for the reasons discussed above. *See supra* ¶¶ 19-21.  But even if Schron had a minority interest in FLTCH, Delaware law would not impose successor liability on a minority shareholder of a purchaser.  Instead, the target of a successor liability claim is "a company that purchases the assets of another company." *In re Nat'l Pipe & Plastics, Inc.*, 2000 WL 33712292, at *6.  Schron is simply not an appropriate target for successor-in-interest claims.

40.     The Wilkes Claimants also fail to allege that FLTCH is a successor-in-interest to the Debtor, THMI, or THI.  The basis of their claim appears to be FLTCH's acquisition of THIB.  Compl. ¶ 267.  Even if successor liability were properly pleaded, this acquisition could only allow the Wilkes Claimants to collect pre-sale liabilities of THIB from FLTCH.  Instead, relying on a conclusory assertion that the sale of THIB was a sale of the "assets" of the entire "THI Enterprise," the Wilkes Claimants seek also to ignore the Debtor's acquisition of THMI and to impose the debts of both THMI and THI on FLTCH. *Id.* ¶¶ 509-10.  No theory of successor liability provides a basis to impose on a successor company the debts of companies that it did not purchase. *See, e.g.*, *In re Tronox, Inc. Securities Litig.*, 769 F.Supp. 2d 202, 216-17 (S.D.N.Y. 2011) (plaintiff

---

[5] Florida law would apply the same test for successor liability claims. *See Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982).

"improperly conflated" two transactions in seeking to impose liabilities spun off in first transaction on party to second transaction). Each of the Wilkes Claimants' three theories in support of successor claims against FLTCH fails.

41.     *First*, the Wilkes Claimants fail to allege facts supporting the "mere continuation" theory of successor liability. Delaware law "construe[s] narrowly" the continuation exception and imposes liability "only where the new entity is so dominated and controlled by the old company that separate existence must be disregarded." *Ross v. Desa Holdings Corp.*, C.A. No. 05C-05-013 MMJ, 2008 WL 4899226, at *4 (Del. Super. Sept. 30, 2008). A plaintiff cannot state a "mere continuation" theory where there is "no continuity of ownership or control" between the seller and the new company. *Id.* If the new company "ha[s] different owners", it is not a "mere continuation," even though it continues the predecessor's business and shares the same employees and officers. *See, e.g., Elmer*, 698 F.Supp. at 542 (noting that "[t]he test is not the continuation of the business operation, but rather the continuation of the corporate entity."); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *9 (Del. Super. Apr. 13, 1988).[6]

42.     The Wilkes Claimants allege that the "THI Enterprise" was owned and controlled by GTCR. Compl. ¶¶ 42-44, 70-71, 75-88. They also allege that the "Fundamental Enterprise" is owned by Grunstein and Forman. *Id.* ¶¶ 274, 318, 319(c). Where there is no continuity of ownership or control between the seller and purchaser, the Wilkes Claimants' mere continuation theory cannot survive a motion to dismiss. *See,*

---

[6] Florida courts likewise reject "mere continuation" claims where the alleged predecessor and successor are "different corporations, with different owners, operating at different times." *Redman v. Cobb Int'l, Inc.*, 23 F.Supp. 2d 1372, 1376 (M.D. Fla. 1998).

*e.g.*, *Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs, Inc.*, No. S11 C-04-013-ESB, 2011 WL 4826106, at *3 (Del. Super. Sept. 19, 2011) (dismissing complaint alleging continuation where purchaser and seller "were two unrelated business entities" and "continued to exist as separate legal entities after the closing").

43.    ***Second***, the Wilkes Claimants fail to allege facts supporting a claim of de facto merger.  Delaware courts "use the doctrine of *de facto* merger sparingly, 'only in very limited contexts.'"  *Maine State Retirement Syst. v. Countrywide Fin. Corp.*, No. 1:10-cv-0302 MRP, 2011 WL 1765509, at *5 (C.D. Cal. Apr. 20, 2011) (surveying Delaware law).  In determining whether a transaction amounts to a *de facto* merger, Delaware courts require the following elements:

> (1) one corporation transfers all of its assets to another corporation; (2) payment is made in stock, issued by the transferee directly to the shareholders of the transferring corporation; and (3) in exchange for their stock in that corporation, the transferee agree[s] to assume all the debts and liabilities of the transferor.

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, -- F.Supp. 2d ---, 2013 WL 4932544, at *7 (S.D.N.Y. Sept. 10, 2013) (applying Delaware law); *Magnolia's*, 2011 WL 4826106, at *3.  Again, continuity of ownership is required and "is only met if shareholders of the predecessor corporation acquire a *direct* ownership interest in the successor corporation." *Tommy Lee Handbags*, 2013 WL 4932544, at *7 (emphasis original) (citing cases).[7]

44.    The facts alleged in the Complaint do not state a claim for de facto merger.  First, the Wilkes Claimants admit that THI did not transfer "all of its assets" in

---

[7] Florida courts likewise require "a continuity of the selling corporation," including not only continuity of management, but "continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities." *Munim v. Azar*, 648 So.2d 145, 153-54 (Fla. 4th DCA 1994).

the 2006 transactions, but remained in business through 2008.  Compl. ¶¶ 328-333.

Second, the Wilkes Claimants admit that payment for THIB was not made through stock

to the shareholders of the "THI Enterprise," but through $10 million in cash.  Compl. ¶

267.  Third, the Wilkes Claimants make no allegation that FLTCH agreed to assume "all

debts and liabilities" of the "THI Enterprise."  Finally, the Wilkes Claimants do not

contend that the shareholders of the "THI Enterprise," *i.e.*, GTCR, acquired a "*direct*

*ownership interest*" in FLTCH, or any ownership interest at all.  *See generally*

*Magnolia's,* 2011 WL 4826106, at *3 (complaint failed to state a claim for de facto

merger where purchaser "only acquired some of" seller's assets, payment was made in

cash, and the purchaser "only assumed some of" seller's liabilities).

     45.    ***Third***, the Wilkes Claimants fail to allege facts supporting their claim of

fraud.  The fraud exception applies where "the transaction is fraudulent and intended to

provide an escape from liability."  *In re Tronox*, 769 F.Supp. 2d at 210 (citing *Polius v.*

*Clark Equip. Co.*, 802 F.2d 75, 78 (3d Cir. 1986)).  Fraud must be stated with

particularity.  Fed. R. Civ. P. 9(b); *see also, e.g.*, *In re Tronox*, 769 F.Supp. 2d at 210.  In

*Tronox*, the plaintiff sought to treat two transactions – the spinoff of certain liabilities to

one company preceding a merger with another company – as a single "deliberate plan,

scheme, and artifice to defraud . . . with the goal of [the merged companies] fraudulently

escaping those liabilities."  *Id.* at 216.  The court dismissed the claims, ruling that the

allegations did not support an inference that the second transaction – the merger – was a

fraud, because "the merger did not affect the ownership of those liabilities . . . in the first

place."  *Id.* at 217.  Likewise, the Wilkes Claimants do not state a claim that the sale of

THIB to FLTCH was a fraud "intended to provide an escape from liability," where they do not plausibly allege that the sale of THIB had any effect at all on the ownership of THMI's liabilities.

### Conclusion

Schron respectfully requests that the Court dismiss the Wilkes Claimants' Complaint for Declaratory Relief with prejudice and grant such other relief as may be proper.

Dated: October 31, 2013
      Tampa, Florida

           /s/ Rod Anderson
           Rod Anderson
           Florida Bar No. 370762
           HOLLAND & KNIGHT LLP
           P.O. Box 1288
           Tampa, FL 33601
           Phone: 813-227-8500   Fax: 813-229-0134
           rod.anderson@hklaw.com

           *and*

           Steven A. Engel
           DECHERT LLP
           1900 K Street, NW
           Washington, DC 20006
           Phone: 202-261-3300  Fax: (202) 261-3333

           Katherine M. Wyman
           DECHERT LLP
           One International Place, 40th Floor
           100 Oliver Street
           Boston, MA 02110
           Phone: (617) 728-7100 Fax: (617) 426-6567

           *Attorneys for Rubin Schron*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2013, a true and correct copy of the foregoing instrument was served electronically by CM/ECF or by U.S. Mail, to the following:

| | |
|---|---|
| **Seth P. Traub, Esq.**<br>**Steven M. Berman, Esq.**<br>Shumaker Loop & Kendrick LLP<br>101 E. Kennedy Blvd., Suite 2800<br>Tampa, FL 33612<br>*Attorneys for Plaintiff* | **Carol A. Licko, Esq.**<br>Hogan Lovells US LLP<br>200 South Biscayne Blvd., Suite 400<br>Miami, FL 33131<br>*Attorneys for GE Capital Corp.* |
| **THI of Baltimore, Inc.**<br>c/o National Corporate Research, Ltd.<br>As Registered Agent<br>615 S. Dupont Highway<br>Dover, DE 19901<br>*Defendant* | **Fundamental Administrative Services, LLC**<br>c/o National Corporate Research, Ltd.<br>As Registered Agent<br>615 S. Dupont Highway<br>Dover, DE 19901<br>*Defendant* |
| **Fundamental Long Term Care Holdings, LLC**<br>c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>*Defendant* | **Murray Forman**<br>291 Ocean Avenue<br>Lawrence, NY 11559<br>*Defendant* |
| **Ventas, Inc.**<br>c/o The Corporation Trust Company<br>as Registered Agent<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>*Defendant* | **Leonard Grunstein**<br>665 North Forest Drive<br>Teaneck, NY 07666<br>*Defendant* |
| **Ventas Realty, LP**<br>c/o The Corporation Trust Company<br>as Registered Agent<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>*Defendant* | **GTCR Golder Rauner, LLC**<br>c/o National Registered Agents, Inc.<br>as Registered Agent<br>160 Greentree Drive, Suite 101<br>Dover, DE  19904<br>*Defendant* |

| | |
|---|---|
| **GTCR Fund VI, LP**<br>c/o National Registered Agents, Inc.<br>as Registered Agent<br>160 Greentree Drive, Suite 101<br>Dover, DE  19904<br>*Defendant* | **GTCR Partners VI, LP**<br>c/o National Registered Agents, Inc.<br>as Registered Agent<br>160 Greentree Drive, Suite 101<br>Dover, DE  19904<br>*Defendant* |
| **GTCR VI Executive Fund, LP**<br>c/o National Registered Agents, Inc.<br>as Registered Agent<br>160 Greentree Drive, Suite 101<br>Dover, DE  19904<br>*Defendant* | **GTCR Associates VI**<br>c/o National Registered Agents, Inc.<br>as Registered Agent<br>160 Greentree Drive, Suite 101<br>Dover, DE  19904<br>*Defendant* |
| **THI Holdings, LLC**<br>c/o National Corporate Research, Ltd.<br>As Registered Agent<br>615 S. Dupont Highway<br>Dover, DE 19901<br>*Defendant* | **Edgar D. Jannotta, Jr.**<br>75 N. Granite Creek Road<br>Teton Village, WY 83025<br>*Defendant* |
| **Gregory M. McCoskey, Esq.**<br>Akerman Senterfitt<br>SunTrust Financial Centre, Suite 1700<br>401 E. Jackson Street<br>Tampa, FL 33602 | **Michael I. Goldberg, Esq.**<br>Akerman Senterfitt<br>350 East Las Olas Blvd., Suite 1600<br>Fort Lauderdale, FL 33301<br>*Attorneys for Fundamental Administrative Services, LLC* |
| **Lisa Markofsky, Esq.**<br>Proskauer Rose LLP<br>2255 Glades Road, Suite 421 Atrium<br>Boca Raton, FL 33431 | **Paul V. Possinger, Esq.**<br>**Brandon W. Levitan, Esq.**<br>Proskauer Rose LLP<br>70 W. Madison St.<br>Chicago, IL 60602-4342<br>*Attorneys for Fundamental Long Term Care Holdings, LLC, THI of Baltimore, Inc., Murray Forman and Leonard Grunstein* |

/s/ Rod Anderson
Attorney