**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No. 8:11-bk-22258-MGW |
| FUNDAMENTAL LONG TERM CARE, INC. | Chapter 7 |
| _____/ | |
| The ESTATE OF JUANITA AMELIA JACKSON, by and through CATHY JACKSON-PLATTS f/k/a CATHERINE WHATLEY, Personal Representative; The ESTATE OF ELVIRA NUNZIATA, by and through RICHARD NUNZIATA, Personal Representative; The ESTATE OF JOSEPH WEBB, by and through ROSE M. WEBB, Personal Representative; The ESTATE OF ARLENE ANNE TOWNSEND, by and through BRENDA S. SHATTUCK, Personal Representative; The ESTATE OF OPAL LEE SASSER, by and through WANDA KAY MUSSELWHITE, Personal Representative; and The ESTATE OF JAMES HENRY JONES, by and through FRANCINA SPIVERY-JONES, Administratrix, | Adv. Pro. No: 8:13-ap-00893-MGW |
| Plaintiffs, | |
| BETH ANN SCHARRER, as Chapter 7 Trustee, and TRANS HEALTH MANAGEMENT, INC., | |
| Intervening Plaintiffs, | |
| v. | |
| GENERAL ELECTRIC CAPITAL CORPORATION; FUNDAMENTAL ADMINISTRATIVE SERVICES, LLC; THI OF BALTIMORE, INC.; FUNDAMENTAL LONG TERM CARE HOLDINGS, LLC; MURRAY FORMAN; LEONARD GRUNSTEIN; RUBIN SCHRON; VENTAS, INC.; VENTAS REALTY, L.P.; GTCR GOLDER RAUNER, LLC; GTCR FUND VI, L.P.; GTCR PARTNERS VI, L.P.; GTCR VI EXECUTIVE FUND, L.P.; GTCR ASSOCIATES VI; EDGAR D. JANNOTTA, JR., AND THI HOLDINGS, LLC, | |
| Defendants. | |
| _____/ | |

{29231677;1}

**JOINT MOTION OF DEFENDANTS HUNT VALLEY HOLDINGS, LLC, THI OF BALTIMORE, INC., MURRAY FORMAN, LEONARD GRUNSTEIN, AND FUNDAMENTAL ADMINISTRATIVE SERVICES, LLC TO EXCLUDE STEVEN S. OSCHER AS PLAINTIFFS' EXPERT WITNESS AT TRIAL**

Defendants Hunt Valley Holdings, LLC ("FLTCH"), THI of Baltimore, Inc. ("THIB"), Murray Forman ("Forman"), Len Grunstein ("Grunstein"), and Fundamental Administrative Services, LLC ("FAS," and together with FLTCH, THIB, Grunstein, and Forman, the "Moving Defendants"), hereby jointly move on the following grounds to exclude Steven S. Oscher as Plaintiffs' testifying expert at trial:

## INTRODUCTION

The Moving Defendants bring this Motion to exclude the inadmissible, irrelevant, and unsupported testimony at trial of the Plaintiff's putative expert witness, Steven S. Oscher ("Oscher"). Mr. Oscher's proffered opinions were first disclosed in Mr. Oscher's Expert Report dated May 23, 2014, a copy of which is attached as Exhibit A. Mr. Oscher was then deposed on June 10, 2014. A copy of that transcript is attached as Exhibit B.

In his Report, Mr. Oscher ostensibly provides two opinions, limited to Plaintiffs' successor liability claim: (1) that the successor corporation is a "mere continuation" of the predecessor corporation (*see* Report, p. 6); and (2) that "the transaction was a fraudulent effort to avoid the liabilities of a predecessor corporation" (see Report, p. 11). Neither of these opinions was claimed to be "final," and Mr. Oscher's Report was certainly equivocal on the strength and finality of his ultimate opinions:

> While my findings to date indicate that there is a basis for determination by the Court of successor or alter ego liability, I will reserve my conclusion until I have received and reviewed the additional documentation.

*See* Report at p. 11.

Mr. Oscher's limited opinions are not based on facts and data, they are not the product of any reliable methodology, and they are not rendered from a reliable application of a recognized methodology. Therefore, Mr. Oscher's testimony and his opinions should be excluded from trial.

## MEMORANDUM

The Court should exclude Mr. Oscher from testifying at trial as an expert witness because his proffered opinions fail to satisfy the standards for admissibility of expert testimony under the United States Supreme Court's seminal decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

### I.    The *Daubert* Standard

*Daubert* requires trial judges to perform a "critical 'gatekeeping' function" as to scientific and technical expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). To determine the admissibility of expert testimony under *Daubert*, trial courts are required "to engage in a rigorous three-part inquiry" addressing the qualifications, reliability and relevance of the proffered opinions. *Frazier*, 387 F.3d at 1260. Trial courts must thus consider: (1) whether the expert is qualified to testify competently regarding the matters which he intends to address; (2) whether the methodology by which the expert reaches conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) whether the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Frazier*, 387 F.3d at 1260.

The purpose of a *Daubert* inquiry is clear: the trial judge must ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert*, 509 U.S. at 597; *see also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1247 (11th Cir. 2005) (stating that "*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and

unreliable opinions do not reach the jury."). *Daubert* applies to the testimony of scientists as well as "other experts who are not scientists." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

It is Plaintiffs' burden to qualify their own expert. "The party offering the expert has the burden of satisfying each of these three [*Daubert*] elements by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). Failure to satisfy any one of the elements is grounds for excluding the expert. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (district court did not err in excluding expert's opinion testimony based on failure to satisfy one of the three elements).

### B. Mr. Oscher's Opinions Do Not Meet the Standard for Admissibility.

In order to be admissible, the Trustee must show that Mr. Oscher's opinion(s) are sufficiently reliable. There are three requirements to establish the reliability of an expert's opinion: (1) the opinion must be based on sufficient facts or data; (2) the opinion must be the product of reliable principles and methods; and (3) the expert must have reliably applied the principles and methods to the facts of the case. *See In re JC Householder Land Trust #1*, 501 BR 441, 454 (Bankr. M.D. Fla. 2013). The first requirement – that the opinion be based on sufficient facts or data – is the most important. *See id.*

#### 1. Mr. Oscher's Opinions Are Not Based on Sufficient Facts or Data.

In order to be admissible, an expert opinion must be based on hard evidence in the form of facts and data. *See Householder* at 454 (rejecting expert opinion based on an unscientific method of placing phone calls to people in the business of lending money to survey the market on interest rates). Mr. Oscher does not even meet the basic requirement of relying on facts or data, let alone *sufficient* facts and data, because he did no more than parrot a few allegations

given to him by the Plaintiffs, without vetting or verifying the accuracy of the allegations in any way. *See Brown v. Lewis*, 2014 WL 354007 at *4 (E.D. Mich. 2014)("[b]ecause Mr. Grant's supplemental expert report does not address the factual allegations that do not comport with the Officers' version of events, it is not 'based on sufficient facts or data,' and therefore his conclusions are not reliable"). Plaintiffs' allegations are not "facts and data," much less reliable facts and data, and Mr. Oscher's proposed expert testimony must therefore be excluded. *See In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2013 WL 5429718 at *18 (N.D. Cal. 2013) ("allegations in pleadings are an unreliable source of facts on which to base expert conclusions compared to market data, economic theory and mathematical analysis").

Moreover, in many instances, Mr. Oscher displayed a fundamental lack of knowledge of even the allegations made by Plaintiffs in the case. For example, when describing the "predecessor company" for purposes of the successor liability claim, Mr. Oscher initially identified THIH (THI Holdings, LLC) and THIB (THI of Baltimore, Inc.) as the predecessors, and not THMI (Trans Health Management, Inc.), as is alleged throughout the complaint.[1] *See* Transcript. at 11:24 – 12:9.

In support of his first opinion, i.e. the "mere continuation" aspect of his successor liability opinion, Mr. Oscher merely repeated a few basic allegations cloaked as "facts" provided to him by Plaintiffs' counsel, without applying any legal analysis whatsoever, and, as described above, without verifying the accuracy of the purported facts. The "facts" Mr. Oscher relied upon are: the same people were performing the same jobs after the stock transaction, albeit for a new company; the same office location was used for the new company; the same furniture, computers, and offices were used; and the same accounting software was used. *See* Report, p. 6-

---

[1] Notably, when describing the successor entities against whom liability would presumably lie, Oscher specifically excluded THIB, FLTCH, Forman and Grunstein by his testimony. *See* Transcript 39:23-40-17.

9. However, Mr. Oscher never bothered to investigate or came to know whether THMI was ever the lessee of the office (*see* Transcript at 44:25 – 45:2); whether THMI was ever the owner of the furniture and computers (*see id.* at 47:9-48:18); or who was the actual owner of the accounting software (*see id.* 49:11-15; 50:11-14).[2] Perhaps more important, he did not know or care to know these important details or at least whether the purported "facts" were in dispute so that he could appropriately apply the facts and data to his analysis.[3]

Regarding the fraudulent avoidance of liabilities aspect of his successor liability opinion, the bases of his opinion are limited to the allegations that Mr. Saacks had no idea that he had purchased THMI and that Mr. Saacks was paid $4,000 to sign certain documents. *See* Report, p. 11. However, Mr. Oscher admits that he has never personally met or observed Mr. Saacks, that he has never talked to him, and that he has no basis to evaluate Mr. Saack's state of mind as of March 2006. *See* 58:1-7.

Finally, and perhaps most significant, both opinions depend on the notion that THMI's assets and liabilities were transferred to the Debtor. *See, e.g.,* Transcript, 20:18-22 ("there appears to have been a fraud related to the transfer of those assets (sic) to the debtor"). But that notion simply comes straight from the allegations in the case. *See* Transcript, 130:23–131:14 ("Is

---

[2] A. . . . The issue has to do with the continuation of the business and the identification of the various indicia. The location is an indication of continuation; the software is a continuation; the computers and furniture is a continuation of the business. These are merely the indication of what that continuation might have been.

Q And you are using these factors as indicia of continuation without any investigation into the underlying legal ownership of these assets; correct?

A Yes, sir.

*See* Transcript 50:4-14.

[3] A review of the lease for the office space would have revealed that THMI was never the lessee. A review of the prior Rule 2004 testimony would have revealed that the furniture, computers and software were actually the property ABE Briarwood acquired as part of its acquisition of IHS Long Term Care, Inc. in 2003 and that this property never belonged to THMI.

it fair to say you are accepting as a fact the allegation that's been made by the plaintiff that THMI's liabilities were transferred to the debtor? Yes."). It is, as this Court has recognized, undisputed that the debtor acquired the stock of THMI, and not its assets or liabilities. *See Memorandum Opinion on Motions to Dismiss* [Doc. No. 204] at p. 9. Mr. Oscher's opinion thus rests on a "fact" that is demonstrably untrue and must be excluded for this additional reason.

### 2. Mr. Oscher's Opinions are Not the Product of Reliable Methodology.

Mr. Oscher's proffered opinions should be excluded from trial because Plaintiffs cannot demonstrate that they are based upon any reliable methodology. Under the *Daubert* standard, Plaintiffs bear the burden of establishing that the methodology employed to reach his conclusions is reliable. *See United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("Our case law plainly establishes that one may be considered an expert but still offer unreliable testimony"). Determining the reliability of expert testimony requires an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-593. The Supreme Court and Eleventh Circuit have "identified several factors which can be considered: (1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Daubert*, 509 U.S. at 593-594.

Plaintiffs cannot demonstrate that Mr. Oscher's purported methodology is reliable with respect to either opinion. Indeed, neither Plaintiffs nor Mr. Oscher have, as yet, even attempted to explain Mr. Oscher's methodology. It is clear that Mr. Oscher did not conduct any investigation as to what successor liability is, or how to measure it, or how to identify it. *See*

Transcript, 34:22–35:19. Beyond reviewing the Court's March 14, 2014 *Memorandum Opinion on Motions to Dismiss* [Doc. No. 204], it appears that Mr. Oscher does not even have a clear definition of the term "successor liability." *See id.* at 35:6-8. Regarding both opinions, Mr. Oscher has not cited any literature, peer review, or other authority supporting either of his opinions. *See* Transcript, 69:2-4 ("Did you rely on any treatise for your ultimate opinions in this case? No, sir."). Equally significant, Mr. Oscher's methodology did not even acknowledge, much less take into account, the Defendants' positions, theories, or versions of the facts. *See id*. at 71:1-14.

In sum, it appears that Mr. Oscher's testimony is merely a rubber stamp of Plaintiffs' allegations, repackaging them as "facts and data" in support of an ultimate conclusion, without applying any "expert" methodologies whatsoever.  Mr. Oscher's proffered opinions fail the reliability prong of the *Daubert* standard because they are wholly insufficient for the Court to make an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" and whether "the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-593.

3.  **Mr. Oscher Did Not Reliably Apply Any Principles or Methods to the Facts of the Case.**

From his Transcript and his Report, it is clear that Mr. Oscher performed little more analysis than assuming the truth of several allegations of the complaint and applying them to the Court's March 14, 2014 *Memorandum Opinion on Motions to Dismiss* [Doc. No. 204]. In fact, when questioned on his second opinion, that successor liability lies because of a "fraudulent effort to avoid the liabilities of a predecessor corporation," Mr. Oscher at one time suggests that his opinion is limited to "the appearance of a fraudulent transaction," and not any conclusion of

an actual fraudulent transaction. *See* Transcript 60:16-22. This can hardly be considered a reliable application of established principles and methods.

Mr. Oscher's opinions can in no way be said to aid the trier of fact in this case. To even conclude that there was fraud involved in the transaction, Mr. Oscher purports to opine on Mr. Saacks' intentions. However, Mr. Oscher cannot be permitted to opine on the state of mind of Mr. Saacks (or anyone else, including Mr. Grunstein). *See Wiand v. Wells Fargo Bank, N.A.*, Case No. 8:12-cv-00557-T-27EAJ (M.D. Fla. May 7, 2014) (expert "would not be permitted to opine on that ultimate factual issue" in a case involving whether the defendants had knowledge of fraudulent activities because, "[g]enerally, experts may not render opinions as to a party's knowledge or state of mind.")

---

This motion does not challenge Mr. Oscher's credentials or his possible expertise in certain other subjects; rather, his proposed opinions are simply not appropriate or admissible for the Plaintiffs in this case. *See Frazier*, 387 F.3d at 1261 (stating that "our case law plainly establishes that one may be considered an expert but still offer unreliable testimony"); *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999) (holding that even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized methodology").

## CONCLUSION

For the reasons stated above, this Court should exclude Steven S. Oscher as Plaintiffs' testifying expert at trial and provide such other and further relief as is just and appropriate.

Dated:  July 21, 2014                                    Respectfully submitted,

| | |
|---|---|
| /s/ | */s/ Gregory M. McCoskey* |
| Lisa Markofsky | Gregory M. McCoskey |
| lmarkofsky@proskauer.com | greg.mccoskey@akerman.com |
| Florida Bar No. 0016673 | Florida Bar No. 0089850 |
| PROSKAUER ROSE LLP | AKERMAN LLP |
| 2255 Glades Road, Suite 421 Atrium | SunTrust Financial Centre, Suite 1700 401 E. Jackson Street |
| Boca Raton, FL  33431 | Tampa, FL 33602 |
| Tel:  (561) 241-7400 | Tel: (813) 223-7333 |
| Fax:   (561) 241-7145 | Fax: (813) 223-2837 |
| -and- | -and- |
| Paul V. Possinger | *s/ Christopher B. Hopkins* |
| PROSKAUER ROSE LLP | Christopher Hopkins |
| 70 W. Madison St. | Florida Bar No. 116122 |
| Chicago, Illinois 60602-4342 | **AKERMAN LLP** |
| Tel:  (312) 962-3550 | 222 Lakeview Avenue, Suite 400 |
| Fax:  (312) 962-3551 | West Palm Beach, Florida  33401 |
| | Telephone:  (561) 653-5000 |
| -and- | Facsimile:   (561) 659-6313 |
| | Primary E-mail: |
| James Sottile | christopher.hopkins@akerman.com |
| Zuckerman Spaeder | Primary E-mail: nellie.chambers@akerman.com |
| 1185 Avenue of the Americas | Secondary Email: barbara.thomas@akerman.com |
| 31st Floor | |
| New York, NY  10036-2603 | *Attorneys for Fundamental* |
| Email:  jsottile@zuckerman.com | *Administrative Services, LLC and* |
| Tel:  212-897-3434 | *THI of Baltimore, Inc.* |
| Fax:  212-704-4256 | |

*Attorneys for Hunt Valley Holdings, LLC, Murray Forman and Len Grunstein*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2014 a true and correct copy of the foregoing was furnished via CM/ECF on all parties to Adversary No. 8:13-ap-00893-MGW.

*/s/ Gregory M. McCoskey*
Attorney