UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                      Case No. 8:11-bk-22258-MGW
                                                            Chapter 7
Fundamental Long Term Care, Inc.,

            Debtor.
_____/

Estate of Juanita Jackson, *et al.*,                        Adv. No. 8:13-ap-00893-MGW
                                                            (consolidated)
            Plaintiffs,

v.

General Electric Capital Corporation,
*et al.*,

            Defendants.
_____/

**MEMORANDUM OPINION ON REQUEST TO**
**CLAW BACK PRIVILEGED DOCUMENTS**

Kirkland & Ellis previously represented Trans Healthcare, Inc. ("THI"), Trans Health

Management, Inc. ("THMI"), THI Holdings, LLC ("THI Holdings"), THI of Baltimore, Inc.

("THI-B"), and the GTCR Group on various matters, some with respect to a corporate restructuring

and others regarding litigation in Ohio.[1] Kirkland & Ellis sent communications to some or all of

those clients (some of which attached documents prepared by the firm) and was the recipient of

communications from them. Before this bankruptcy case was filed, THI's state-court receiver

disclosed some of the communications (as well as some of the documents prepared by Kirkland &

Ellis) to a probate estate that had sued THMI. The Trustee also received some of those

_____

[1] THI Holdings was previously the parent company of THI and THI-B. THMI, in turn, was THI's wholly owned subsidiary. And the GTCR Group, which is comprised of a number of different entities, was THI Holding's primary shareholder.

communications during discovery in this adversary proceeding. The Court must now decide
whether the Trustee has to return those documents to the GTCR Group because they are
privileged.[2]

The Court concludes that all of the documents before the Court are privileged (including
ones sent to individuals who served as officers and/or directors of both THI and THMI).[3] But the
Trustee (standing in the shoes of THMI) is entitled to keep any communications relating to the
defense of the lawsuits in Ohio because THMI was a co-client with THI and GTCR in that
litigation. The Trustee, however, is not entitled to invoke the co-client exception to obtain any of
the other documents—namely, documents relating to the restructuring of THI or any potential
THMI bankruptcy. THMI was not a co-client with THI or the GTCR Group with respect to the
restructuring or potential bankruptcy. Nor was the privilege waived when those documents were
inadvertently produced before and during this proceeding. Accordingly, the Court will enter an
order (i) requiring the Trustee to turn over to the GTCR Group all of the documents other than
those specifically relating to the defense of the Ohio litigation; and (ii) directing the Trustee not to
disclose the documents to anyone who would destroy the privilege.

## Background

This discovery dispute, like most of the others that have recently arisen in this case, relates
to a previous ruling this Court made regarding the co-client exception to the attorney-client

---

[2] Adv. Doc. Nos. 129, 129, 576 & 591.

[3] The GTCR Group filed a privilege log identifying twenty-one documents at issue. Adv. Doc. No. 191-3. As
discussed below, the Trustee obtained possession of fifteen of those documents (Privilege Log Doc. Nos. 2-9, 11, 14,
16-19 & 21). Adv. Doc. No. 129 at 4 n.8. The GTCR Group apparently later amended its privilege log to add three
more documents. Adv. Doc. No. 191 at 5 n.3. The Court does not have that privilege log. Without the additional three
documents or the amended privilege log, the Court cannot determine whether those documents are privileged. So the
Court is only ruling on the twenty-one documents identified on the original privilege log. Adv. Doc. No. 191-3.

privilege.[4] That ruling arose out of a request by the Trustee for (among other things) the litigation files for the defense of various negligence claims filed against THI and THMI in state court by six probate estates (the "Probate Estates"). Because THI and THMI were represented by the same lawyers in those cases, this Court ruled that the Trustee (standing in the shoes of THMI) was entitled to all of THMI's litigation files—including any communications between THI (or its state-court receiver) and any of the lawyers representing THI and THMI—under the co-client exception to the attorney-client privilege.[5]

In response to that ruling, various law firms that had defended THI and THMI produced their litigation files to the Trustee. One of the firms—Wisler Pearlstine—included an e-mail in their production that contained the username and password to a database maintained by the Proskauer Rose law firm. That database—referred to as the Relativity database—contained files that the THI Receiver had uploaded (at least in part) for the benefit of lawyers defending THI and THMI in the state-court negligence cases. The Trustee accessed the Relativity database and gained access to the files the THI Receiver had uploaded. Part of that production included fifteen documents prepared by—or communications to and from—Kirkland & Ellis.[6]

Those fifteen Kirkland & Ellis documents (along with another six Kirkland & Ellis documents that are at issue) can generally be separated into two categories. The first category of documents consists of memoranda and other documents relating to the proposed restructuring of

---

[4] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 463-69 (Bankr. M.D. Fla. 2013).

[5] *Id.*

[6] The Trustee says she received the following documents identified on the GTCR Group's privilege log from the Wisler Pearlstine production: Doc. Nos. 2-9, 11, 14, 16-19 & 21 (technically, the Trustee's motion does not say she received Doc. No. 11, but she later produced it to the Court). Adv. Doc. No. 129. The remaining documents on the GTCR Group's privilege log (Adv. Doc. No. 191-3) apparently were produced to the Probate Estates by the THI Receiver during state-court litigation. The GTCR Group says those documents were produced inadvertently. As set forth in footnote 2 above, the Court is not addressing the three documents not included on the GTCR Group's original privilege log.

THI and other corporate matters, including an analysis of a proposed THI bankruptcy filing and documents relating to the March 2006 transaction in which THI sold all of the stock in THMI to the Debtor. The second category of documents relates to lawsuits that were filed against THI and THMI (as well as others) in Ohio by the landlords, lenders, and receivers of two THI subsidiaries. The GTCR Group seeks to claw back both categories of documents as privileged.[7]

It appears the GTCR Group, which is currently represented by Kirkland & Ellis in this proceeding, was previously represented by the firm with respect to general corporate matters, as was THI, THI-B, and THI Holdings. The GTCR Group, along with THI, THMI, and others, also retained Kirkland & Ellis to represent them in the Ohio litigation. The documents at issue have to do with matters relating to Kirkland & Ellis' representation of the GTCR Group and others.

In response to the GTCR Group's privilege claim, the Trustee says she is entitled to retain and use both categories of documents for three reasons: First, she says at least one of the Kirkland & Ellis documents—an April 13, 2005 litigation planning memorandum—is not privileged in the first place because it was sent to three THMI employees. Second, the Trustee (standing in the shoes of THMI) claims she is entitled to the documents relating to the Ohio litigation under the co-client exception since Kirkland & Ellis represented THI and THMI in those cases. Third, to the extent the Court concludes that the Kirkland & Ellis documents are privileged and that the Trustee is not entitled to them under the co-client exception, the Trustee says the attorney-client privilege was waived when the documents were produced to one of the Probate Estates during pre-bankruptcy litigation and to the Trustee in this adversary proceeding. The Court will address each of these arguments in turn.

---

[7] Adv. Doc. Nos. 191 & 591.

### Conclusions of Law[8]

#### The Kirkland & Ellis documents sent to Brad Bennett, Mark Fulchino, and Sean Nolan are privileged

The Trustee's claim that the April 2005 memorandum is not privileged in the first place hinges on the fact that the documents were sent to three individuals who worked for THMI: Brad Bennett (THMI's CEO), Mark Fulchino (THMI's CFO), and Sean Nolan (THMI's CAO). It is true, of course, that a document cannot be privileged, generally speaking, if it is disclosed to someone other than the attorney or client (or an agent of either). But here, the THMI employees that received the April 2005 memorandum were also officers of THI.[9]

According to the Third Circuit Court of Appeals' somewhat recent decision in *In re Teleglobe Communications*, a communication by an attorney to an officer of a parent corporation is privileged even if the officer of the parent also serves as an officer or director for a subsidiary corporation.[10] As the Third Circuit observed, individuals often serve as officers and directors of parent and subsidiary corporations.[11] And courts generally presume that an officer is wearing his or her "parent hat"—not the "subsidiary hat"—when acting for the parent.[12] Under the Third Circuit's analysis, which this Court agrees with, documents disclosed to Bennett, Fulchino, and

---

[8] The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Moreover, no party timely objected to this Court entering a final order or judgment in this case. An order objecting to the Court's authority to enter a final judgment was required to be filed by the deadline for responding to the complaint. Adv. Doc. No. 3 at ¶ 4. Accordingly, the parties are deemed to have consented to this Court entering a final order or judgment.

[9] Adv. Doc. Nos. 191-9; 191-10, 191-11 & 191-12.

[10] *Teleglobe USA, Inc. v. BCE, Inc. (In re Teleglobe Commc'ns),* 493 F.3d 345, 372 (3d Cir. 2007).

[11] *Id.* (citing *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).

[12] *Id.*

Nolan are privileged unless they were disclosed to those individuals in their capacity as THMI employees.[13]

The Trustee argues that the April 2005 memorandum was necessarily sent to those individuals in their capacity as THMI employees. For starters, each of them testified during their deposition that THMI was their employer and paid them their salary.[14] Moreover, THI was merely a holding company; it did not have employees.[15] Finally, the Trustee argues that the April 2005 memorandum implicates THMI's interests.[16] After its in-camera review of the April 2005 memorandum, the Court concludes that it was sent to Bennett, Fulchino, and Nolan in their capacity as THI—not THMI—officers.

Most telling, the April 2005 memorandum does not even mention THMI. To be sure, it does discuss the Ohio litigation, which THMI is a party to. But from what the Court can tell, THI and the GTCR Group were the principal defendants in that litigation. THMI presumably is a defendant because of some sort of guarantee. In any case, the memorandum deals with the possibility of putting THI into bankruptcy. Given all that, the Court concludes that the April 2005 memorandum is privileged even though it was sent to individuals who worked for THMI.

**The Trustee is only entitled to documents relating to the
<u>defense of the Ohio litigation under the co-client exception</u>**

Under this Court's previous co-client ruling, the fact that THI retained (and paid for) Kirkland & Ellis to represent itself and THMI in the Ohio litigation, by itself, does not mean the

---

[13] *In re Teleglobe Commc'ns*, 493 F.3d at 372.

[14] Adv. Doc. No. 302 at pp. 31-34.

[15] *Id.*

[16] *Id.*

Trustee (standing in the shoes of THMI) is permitted to invoke the co-client exception to obtain

otherwise privileged documents relating to the March 2006 transaction or the Ohio litigation:

> [C]courts have not been satisfied to simply ask whether each of two
> persons sought legal service or advice from a particular lawyer in
> her professional capacity.[17]

Rather, the test is whether it would have been reasonable for THMI—taking into account all the

relevant circumstances—to have inferred that it was a client of Kirkland & Ellis.[18]

Taking into account all of the relevant circumstances, it would not have been reasonable

for THMI to infer it was a client of Kirkland & Ellis with respect to the March 2006 transaction. To

begin with, the retainer agreement between Kirkland & Ellis and THI specifically provides the

attorney-client relationship is between the firm and THI and that no subsidiary of THI—i.e.,

THMI—had the status of a "client."[19] On top of that, the March 2006 transaction culminated in a

stock purchase agreement that likewise provided that THI "retained Kirkland & Ellis . . . to act as

its counsel in connection with the transactions" and "that none of the other parties has the status of

a client of [Kirkland]." And even if THMI somehow could have inferred it was a client, the stock

purchase agreement expressly provided that the "attorney-client privilege and the expectation of

client confidence belongs to [THI]" and that it "shall not pass to or be claimed by [the Debtor] or

[THMI]."[20] So the Trustee (standing in the shoes of THMI) is not entitled to invoke the co-client

exception to obtain documents relating to the March 2006 transaction.

---

[17] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 464-65 (Bankr. M.D. Fla. 2013) (quoting *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648, 651 (N.D. Cal. 1993)).

[18] *Id.*

[19] The retainer agreement between THI and Kirkland & Ellis was attached as Exhibit A to the GTCR Group's claw-back motion. Adv. Doc. No. 191. Exhibit A was filed with the Court under seal.

[20] Adv. Doc. No. 191-1 at § 9D.

Documents related to the defense of the Ohio litigation, however, are a different story. Here, it appears that (i) THI retained Kirkland & Ellis to represent THMI in the Ohio litigation; (ii) Kirkland & Ellis actually appeared in the Ohio litigation on behalf of THMI; and (iii) Kirkland & Ellis advanced legal positions on THMI's behalf. The First Circuit Court of Appeals, in *FDIC v. Ogden*, expressly held that a party is a "client" of a firm and therefore entitled to invoke the co-client exception where, like here, the law firm appeared in litigation on behalf of the client seeking to invoke the co-client exception and advanced legal positions on the client's behalf.[21]

Notwithstanding that, the GTCR Group raises four arguments why the co-client exception does not apply here. First, it says this Court previously ruled that the Trustee was not entitled to documents unrelated to the defense of the state-court negligence cases under the co-client exception. Second, the Court's previous co-client ruling was based, at least in part, on a contractual right of equal access to information between two clients, and no such contractual right exists here. Third, the purpose of the co-client exception is to prevent an unjustifiable inequality in access to information necessary to resolve a dispute over the subject of the joint representation. This adversary proceeding, however, has nothing to do with the Ohio litigation. Fourth, the terms of the parties' joint representation shows that the parties never contemplated one of the parties could unilaterally use joint communications against another.[22] While those arguments are all true so far as they go, they do not prevent the Trustee from invoking the co-client exception with respect to the Ohio litigation.

Nothing in this Court's previous co-client ruling limits the application of that exception here. To be sure, this Court did previously rule, as the GTCR Group argues, that the Trustee could

---

[21] *FDIC v. Ogden Corp.*, 202 F.3d 454, 461-63 (1st Cir. 2000).

[22] The parties' joint defense agreement was attached to GTCR's claw-back motion as Exhibit F. Exhibit F, like the THI retainer agreement, was filed with the Court under seal.

only invoke the co-client exception to obtain communications relating to the defense of the state-court negligence cases. But that was because that was the only issue before the Court. The Court, of course, was not deciding the scope of the co-client exception for all purposes or ruling that the defense of the negligence case was the only joint representation between THI and THMI. It is likewise true that, unlike with the state-court negligence cases, there does not appear to be any contractual right of access to communications here. As this Court previously explained, however, the existence of a contractual right of access is simply one of many factors serving as a proxy for the ultimate issue—i.e., whether it was reasonable under all the circumstances for THMI to infer it was a client for purposes of the co-client exception.[23] And in any event, the purpose of the co-client exception is served here since there is, in fact, a dispute between the GTCR Group and THMI relating to the Ohio litigation (as evidenced by the claims in this proceeding), even if they do not relate to the underlying liability in those cases.

That leaves the GTCR Group's argument that the terms of the joint defense agreement reflect an intent to prohibit one party from using joint communications unilaterally against another. In its previous ruling on the co-client exception, this Court considered the effect of a joint defense agreement in bankruptcy. Relying on *In re Ginn-LA St. Lucie, Ltd.*, the Court explained that the attorney-client privilege must give way when necessary to promote an important public policy, and enforcing a joint defense in bankruptcy (in some instances) could offend public policy by thwarting a trustee's statutory duty to investigate claims for the benefit of creditors.[24] Enforcing the joint defense agreement here, like in this case before, would offend public policy.

---

[23] *In re Fundamental Long Term Care, Inc.*, 493 B.R. 620, 625 (Bankr. M.D. Fla. 2013).

[24] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 472-73 (Bankr. M.D. Fla. 2013) (relying on *In re Ginn-LA St. Lucie, Ltd.*, 439 B.R. 801, 804-05) (Bankr. S.D. Fla. 2010)).

So the Trustee is entitled to documents relating to the Ohio litigation, subject to two limitations: First, similar to the Court's previous co-client ruling, the Trustee (standing in the shoes of THMI) is only entitled communications relating to the defense of the Ohio litigation. Second, the Trustee is not entitled to share those documents with any third party that would destroy the co-client privilege. Documents unrelated to the defense of the Ohio litigation otherwise remain privileged.

The attorney-client privilege was not
<u>waived by an inadvertent disclosure</u>

Even though documents other than those relating to the defense of the Ohio litigation are privileged, the Trustee says she is entitled to them because the GTCR Group waived the privilege by disclosing the privileged documents to third parties. The Eleventh Circuit has recognized, as has virtually every other court of appeal, that attorney-client communications are no longer confidential once they have been disclosed to third parties.[25] At first glance, the Trustee makes a compelling argument the attorney-client privilege was waived with respect to the Kirkland & Ellis documents.

According to the Trustee, the attorney-client privilege with respect to the Kirkland & Ellis documents was waived for four reasons:[26] First, the THI Receiver produced at least some of the documents between May 24, 2011 and July 22, 2011 in state-court litigation between THMI and one of the Probate Estates (the Estate of Nunziata). Second, the Trustee says at least some of those documents were used by the Estate of Jackson in proceedings supplementary it initiated in connection with the state-court negligence case against THI and THMI. In particular, the Probate

---

[25] *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987).

[26] Adv. Doc. No. 576.

Estates filed some of the documents on the district court docket[27] and later used them during the deposition of Ned Jannotta. Third, the Trustee says the Plaintiffs in this proceeding included portions of some of the privileged documents in their amended complaint in this proceeding. Fourth, the Trustee says the Kirkland & Ellis documents were again produced during discovery in this proceeding, and disclosure of those documents was consented to by the THI Receiver. The problem is the Trustee's retelling of the history of the production and use of the Kirkland & Ellis documents largely overlooks two key facts.

The Trustee overlooks the fact that the initial disclosure of the privileged documents in 2011 and the later disclosure in this proceeding was inadvertent. The THI Receiver apparently included (some or all of) the twenty-one Kirkland & Ellis documents—totaling a couple hundred pages or so at most—as part of its production of 110,000 pages of documents in the *Nunziata* state –court litigation. The GTCR Group has filed an affidavit of the THI Receiver attesting to the fact that the production was inadvertent.[28] In fact, the Trustee does not really appear to dispute whether the disclosure itself was inadvertent as much as she suggests the GTCR Group did not do enough to rectify the inadvertent disclosure, which leads to the second overlooked fact.

The GTCR Group repeatedly objected to each and every use of the privileged documents. There is no need for the Court to catalogue each instance in which the GTCR Group did so. The GTCR Group actually attached a helpful—and, it appears, unrebutted—chronology to a supplemental memorandum it filed that outlines each use of the privilege documents and the GTCR Group's objection to each such use.[29] So the GTCR Group unquestionably objected to use

---

[27] It appears the proceedings supplementary were originally filed in state court but later removed to district court.

[28] Adv. Doc. No. 191-5.

[29] Adv. Doc. No. 591-1.

of the privileged documents. The Trustee's argument seems to be that the GTCR Group has waived the privilege because it has not taken any—or perhaps enough—action to have the privileged documents removed from the district court's electronic docket.

That argument implicates one of the five factors Florida courts typically look at in determining whether a disclosure was inadvertent: (i) the reasonableness of precautions taken to prevent inadvertent disclosure; (ii) the number of inadvertent disclosures; (iii) the extent of the disclosure; (iv) any delay and measure taken to rectify the disclosures; and (v) whether the overriding interests of justice would be served by relieving a party of its error.[30] Even if the GTCR Group could have done more to rectify the inadvertent disclosure (i.e., have the privileged documents removed from the docket) or was delayed in doing so, the Court nevertheless finds the privilege has not been waived.

It is worth noting initially that the measures taken to rectify an inadvertent disclosure is only one of five factors courts consider in determining whether the privilege has been waived. And each of the other four factors weighs in favor of finding the privilege has not been waived. The Court is comfortable that the GTCR Group has taken reasonable precautions in preventing disclosure of privileged communications, there were (at most) only two inadvertent disclosures of the same documents, the extent of the disclosure was minimal compared to the extent of the overall production, and the overriding interests of justice would not be served by finding the privilege was waived. On that last point, the Trustee's argument is that the public interest would be served because having the privileged documents would help her prosecute her claims for relief in this proceeding.[31] But if that were the standard, that factor would always weigh in favor of finding the

---

[30] *Lightbourne v. McCollum*, 969 So. 2d 326, 333 n.6 (Fla. 2007). The Federal Rules of Evidence adopt similar factors. *See* Fed. R. Evid. 502.

[31] Adv. Doc. No. 576 at 12-14.

privilege has been waived. So the Court is not convinced that the privilege would be waived even if the measures taken by the GTCR Group to rectify the disclosure were deficient.

But in any event, the Court is not convinced the GTCR Group's efforts were deficient, at least so far as waiving the privilege goes. It is true, on the one hand, that the GTCR Group never had the privileged documents removed from the docket. On the other hand, the Trustee is overlooking the burden the Florida Rules of Civil Procedure impose on her counsel and counsel for the Probate Estates. Interestingly, most of the five factors courts consider when determining whether an inadvertent disclosure waives the privilege deal with what happens before or at the time of disclosure. Florida law imposes a separate set of obligations on parties receiving notice of an inadvertent disclosure.

Under Florida law, a party receiving an inadvertent disclosure must do three things: (i) promptly return, sequester, or destroy the privileged materials; (ii) promptly notify the party whose documents were inadvertently disclosed; and (iii) take reasonable steps to retrieve the materials that were inadvertently disclosed.[32] That coincides with an attorney's ethical obligation to notify opposing counsel if the attorney knows or reasonably should know that a privileged document was inadvertently disclosed.[33] From the record before the Court, it appears counsel for the Probate Estates or the Trustee largely failed to comply with their obligations.

It is true that counsel for the Trustee and Probate Estates redacted their amended complaint in this proceeding when notified it contained potentially privileged information. But apart from that, it does not appear counsel for the Probate Estates or Trustee notified counsel for the THI Receiver when they received what are, at a minimum, arguably privileged documents. Nor does it

---

[32] Fla. R. Civ. P. 1.285.

[33] R. Reg. Fla. Bar 4-4.4(b).

appear they sequestered or destroyed the documents. In fact, they repeatedly attempted to use them after they were notified the documents were potentially privileged. More significantly, it does not appear counsel for the Probate Estates ever made any attempt to have the privileged documents removed from the district court's on-line docket.

None of this is to say that any of the lawyers involved committed any sort of ethical breach. It is not clear that the GTCR Group is directly claiming that is the case. And the Court certainly does not have enough record evidence—nor is it inclined to conclude—that they did. It is only to say that the Trustee cannot claim that the GTCR Group has waived the privilege by not doing enough to rectify an inadvertent disclosure when her counsel (and counsel for the Probate Estates) failed to satisfy their obligations to retrieve and destroy any inadvertently produced documents or, at a minimum, seek a ruling from the district court or this Court before using them.

<u>The GTCR Group has standing to raise its privilege objections</u>

It is worth addressing one more global issue raised by the Trustee—that is, THI's involvement or lack thereof in this claw-back motion. The Court has already addressed THI's initial involvement in inadvertently disclosing the Kirkland & Ellis documents. But the Trustee also points out that when she asked the THI Receiver if he objected to her disclosing documents she received under the co-client exception (which included some of the inadvertently produced documents), the THI Receiver did not object. That is notable, according to the Trustee, because she says the privilege is really the THI Receiver's to assert or waive.

The Court concludes that the GTCR Group has standing to assert the privilege, irrespective of whether the GTCR Group was the sender or recipient of the communication. It is clear from the Court's review of the record that Kirkland & Ellis represented the GTCR Group (a fact that the Trustee does not dispute) and that the GTCR Group and THI were co-clients with respect to the

restructuring and Ohio litigation. As THI's co-client, the GTCR Group is entitled to invoke the attorney-client privilege, and THI cannot waive that privilege unilaterally.[34]

### Conclusion

The Court concludes that all twenty-one of the Kirkland & Ellis documents identified on the GTCR Group's original privilege log are privileged. But the Trustee is entitled to some of them—i.e., any communications relating to the defense of the Ohio litigation—because THMI was a co-client with THI and GTCR in that litigation. The Trustee is not entitled to invoke the co-client exception to any of the other documents since THMI was not a co-client with THI or the GTCR Group with respect to the restructuring of THI. Accordingly, the Court will enter an order (i) requiring the Trustee to turn over to the GTCR Group all of the documents other than those specifically relating to the defense of the Ohio litigation; and (ii) directing the Trustee not to disclose the documents to anyone who would destroy the privilege.

**DATED**: ___September 12, 2014_____.

_____
Michael G. Williamson
United States Bankruptcy Judge


Attorney Jeffrey W. Warren is directed to serve a copy of this order on interested parties and file of proof of service within 3 days of entry of this order.

**Jeffrey W. Warren, Esq.**
  **Bush Ross, P.A.**
**Gabor Balassa, Esq.**
**Matthew E. Nirider, Esq.**
  **Kirkland & Ellis LLP**
*Counsel for GTCR Associates, VI; GTCR Fund VI, LP; GTCR Golder Rauner, LLC; GTCR Partners VI, LP; GTCR VI Executive Fund, LP; Edgar D. Jannotta, Jr.; THI Holdings, LLC*

---

[34] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 463 (Bankr. M.D. Fla. 2013).

**Steven M. Berman, Esq.**
**Seth P. Traub, Esq.**
**Shumaker, Loop &Kendrick, LLP**
*Counsel for the Chapter 7 Trustee*