ORDERED.

Dated:  **August 31, 2016**

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 8:11-bk-22258-MGW
                                                                Chapter 7
Fundamental Long Term Care, Inc.
and Trans Health Management, Inc.,

      Debtors.
_____/

Estate of Juanita Jackson, et al.,                              Adv. No. 8:13-ap-00893-MGW

      Plaintiffs,

v.

General Electric Capital Corporation,
et al.,

      Defendants.
_____/

## ORDER AND MEMORANDUM OPINION
## ON MOTION TO SUPPLEMENT RECORD

Federal Rule of Bankruptcy Procedure 8009 permits this Court to supplement

the record on appeal if anything material is omitted by mistake. Here, six probate

estates appealed a final judgment in favor of Rubin Schron, which the Court entered after dismissing all the probate estates' claims against him with prejudice. The probate estates have now asked the Court to supplement the record on appeal with a deposition transcript they relied on in objecting to entry of final judgment after the dismissal order. Because the Court never considered the deposition transcript, it would be inappropriate to include it in the record on appeal.

### Background[1]

Twelve years ago, the Probate Estates filed the first of six lawsuits against Trans Healthcare Management, Inc. ("THMI"), which managed nursing homes operated by Trans Healthcare, Inc. ("THI") and THI of Baltimore, Inc. ("THI Baltimore").[2] By 2009, the other five lawsuits had been filed against THMI. In 2010, the Estate of Juanita Jackson, one of the Probate Estates, obtained a $110 million judgment against THMI. Another $1.1 billion in judgments were entered against THMI in 2012. For the last six years, the Probate Estates have been attempting to collect their judgments against THMI from third parties, including Rubin Schron.

The claims against Rubin Schron (and others) arise out of an alleged bust-out scheme intended to divest THMI of all its assets for less than reasonably equivalent

---

[1] The background section of this memorandum opinion largely comes from the complaint that the Chapter 7 Trustee and Probate Estates filed in this proceeding.

[2] THMI was a wholly owned subsidiary of THI, which owned and operated approximately 70 nursing homes. THI Baltimore was THI's sister company. They were both wholly owned subsidiaries of THI Holdings, LLC. THI Holdings formed THI Baltimore to acquire 120 nursing homes from Integrated Health Services, which was in bankruptcy in Delaware. THI Baltimore, however, was outbid at the last minute by Abe Briarwood. Abe Briarwood ended up leasing the nursing homes it acquired to THI Baltimore to operate.

value in order to thwart THMI's creditors. The alleged bust-out scheme worked as follows: Murray Forman (Schron's investment banker) and Leonard Grunstein (Schron's lawyer), who masterminded the scheme, incorporated two entities: Fundamental Long Term Care Holdings ("FLTCH"), which was a legitimate entity set up to acquire THI Baltimore's stock, and Fundamental Long Term Care, Inc. ("FLTCI"), which was a sham entity set up to acquire THMI.[3] In furtherance of this scheme, Forman and Grunstein gave FLTCI to an elderly gentleman named Barry Saacks[4] and retained ownership of FLTCH.[5] Forman then negotiated for (1) FLTCH to acquire THI Baltimore from its parent company (THI Holdings) for approximately $10.1 million; and (2) FLTCI to acquire THMI from THI for $100,000 as part of two linked stock sales.[6] Forman and Grunstein also arranged for Saacks to sign the documents and paid him for his signature.[7]

After the transactions closed, Forman and Grunstein looted all of THMI's assets and transferred them to FLTCH, which in turn transferred them to a newly created subsidiary, Fundamental Administrative Services ("FAS").[8] Saacks had no idea he owned FLTCI, which was a sham company with no business operations, or

---

[3] Adv. Doc. No. 289 at ¶¶ 1206, 1207, 1208, 1209.

[4] Adv. Doc. No. 289 at ¶¶ 1212.

[5] Adv. Doc. No. 289 at ¶¶ 1523.

[6] Adv. Doc. No. 289 at ¶¶ 1213, 1214, 1216, 1217.

[7] Adv. Doc. No. 289 at ¶¶ 1218, 1220, 1221.

[8] Adv. Doc. No. 289 at ¶¶ 1218, 1220, 1221.

that FLTCI acquired THMI.[9] In the end, Forman and Grunstein ended up with 120 nursing homes leased by THI Baltimore and the management company assets they needed to operate those homes, which they operated under the "Fundamental" name, without acquiring the management company's liabilities.[10]

The bust-out scheme ended up in this Court when the Jackson Estate obtained its $110 default judgment against FLTCI as part of state court proceedings supplementary and then initiated this involuntary chapter 7 case.[11] This Court ultimately ordered the Chapter 7 Trustee and the Probate Estates to bring any claims they had arising out of the bust-out scheme in one proceeding in this Court.[12] In response to this Court's orders, the Trustee and Probate Estates filed a joint complaint.[13]

The Trustee and Probate Estates sued everyone involved in the transaction: THI Holdings (THI and THI Baltimore's parent company); Ned Jannotta (a THI Holdings and THI board member); the GTCR Group (which owned THI Holdings); General Electric Capital Corporation; Ventas, Inc.; and Ventas Realty, LP (THI's

---

[9] Adv. Doc. No. 289 at ¶¶ 1224, 1225, 1226, 1227.

[10] FLTCH rebranded THMI's assets under its name or the name of one of its newly created subsidiaries (FAS) and used them to generate millions of dollars in profits. Adv. Doc. No. 289 at ¶¶ 1228, 129, 1230.

[11] Doc. No. 1.

[12] Doc. No. 1272. The Court's reasoning was set out in two reported memorandum opinions. *Scharrer v. Fundamental Long Term Care Holdings, LLC (In re Fundamental Long Term Care, Inc.)*, 500 B.R. 147 (Bankr. M.D. Fla. 2013); *In re Fundamental Long Term Care, Inc.*, 501 B.R. 770 (Bankr. M.D. Fla. 2013).

[13] Adv. Doc. No. 109.

lenders); FLTCI (the sham company that acquired THMI's stock); FLTCH (which

acquired THI Baltimore's stock and looted THMI's assets); THI Baltimore (the

company sold to FLTCH); FAS (the FLTCH subsidiary that ultimately ended up

with THMI's assets); Forman and Grunstein (the owners of FLTCH who

masterminded the scheme); and Schron.

Initially, the Probate Estates contended that: (1) the GTCR Group, THI

Holdings, and Jannotta breached their fiduciary duties to the Probate Estates by

agreeing to sell THMI and THI Baltimore for less than they were worth; (2) all of the

remaining Defendants aided and abetted that breach of fiduciary duty; (3) FLTCH,

THI Baltimore, FAS, Forman, Grunstein, and Schron were the successors to or the

alter ego of THI and THMI; (4) the GTCR Group, THI Holdings, and Jannotta were

liable for THI's and THMI's debts under a veil-piercing theory; (5) FLTCH, THI

Baltimore, FAS, Forman, Grunstein, and Schron were liable for the debts of FLTCI

under a veil-piercing theory; and (6) all of the Defendants were liable for actual and

constructive fraudulent transfer, as well as conspiring to commit a fraudulent

transfer. The Probate Estates later asserted four new claims: abuse of process,

conspiracy to commit abuse of process, negligence, and avoidance of a postpetition

transfer.[14]

In the end, the Court dismissed all of the claims against Schron with prejudice.

The Probate Estates' various complaints, which asserted thirty-two claims for relief

---

[14] Technically, the negligence and postpetition transfer claims were brought by the Trustee, who was also a plaintiff in this proceeding.

against seventeen defendants involved in the alleged bust-out scheme, totaled nearly 300 pages and more than 1,600 allegations.[15] Of the 1,600 allegations in the complaints, however, only 69 paragraphs alleged specific actions taken by Schron.[16]

According to the Probate Estates, Schron introduced Saacks to Grunstein years before the bust-out scheme closed in March 2006;[17] one of Schron's companies (SWC Property Holdings, LLC) acquired a one-third option in FLTCH several months after the stock sales closed;[18] SWC exercised the one-third option and designated another Schron entity (Quality Health Care) as the entity to take title to the one-third interest in FLTCH;[19] Schron became a beneficial owner of FLTCH as a consequence of Quality Health Care taking title to a one-third interest in the company;[20] Schron paid $200,000 to acquire any claims THI may have had against him, which are supposedly worth $2 billion, as well as the right to control THMI's defense against any claims by the Probate Estates.[21] The Court concluded those

---

[15] Adv. Doc. Nos. 109 & 289.

[16] Adv. Doc. No. 109 at ¶¶ 66, 101, 125, 137, 148, 151, 153-55, 157-60, 166-68, 334, 402-05, 407, 408, 410, 413, 465, 512, 536; 1213; Adv. Doc. No. 289 at ¶¶ 1242, 1248, 1250, 1251, 1256, 1259, 1260, 1382, 1383, 1387, 1389, 1391, 1392, 1397, 1399-1405, 1419, 1514, 1520, 1522, 1524-26, 1530, 1532-35, 1538, 1539, 1544-47, 1554.

[17] Adv. Doc. No. 289 at ¶ 334.

[18] *Id.* at ¶¶ 1247, 1248.

[19] *Id.* at ¶¶ 1259, 1260.

[20] *Id.* at ¶ 1256.

[21] *Id.* at ¶ 1419.

allegations were insufficient to plausibly allege Schron participated in or personally

benefited from the transfer of THMI's assets, so it dismissed the claims against him.[22]

The Probate Estates had attempted to overcome the obvious paucity of

allegations of conduct by Schron in two ways. First, they attempted to attribute

Forman's and Grunstein's actions to Schron by claiming they were acting as his

agents.[23] In particular, the Probate Estates incorporated into their complaint

allegations from a complaint Schron filed against Forman and Grunstein, which

alleged that Forman and Grunstein were his fiduciaries and acting as his agents

when FLTCH acquired THI Baltimore.[24] Second, when the Probate Estates could

not attribute any particular act to Schron, they simply lumped him in with the other

actors.[25] The Court, however, rejected those approaches for a variety of reasons.

---

[22] *Estate of Jackson v. Gen. Elec. Capital Corp. (In re Fundamental Long Term Care, Inc.)*, 507 B.R. 359 (Bankr. M.D. Fla. 2014); *Estate of Jackson v. Gen. Elec. Capital Corp. (In re Fundamental Long Term Care, Inc.)*, 512 B.R. 690 (Bankr. M.D. Fla. 2014). The closest the Probate Estates came to alleging Schron benefited from the transfer of THMI's assets was their allegation that Quality Health took title to a one-third interest in FLTCH. Adv. Doc. No. 289 at ¶ 1259, 1260. Under Bankruptcy Code § 550(a), a trustee can recover a fraudulent transfer from the initial transferee or "the entity for whose benefit such transfer was made." But the Probate Estates never provided any authority for the proposition that the "owner" of an entity that ultimately takes title to a one-third option in the recipient of a fraudulent transfer is "an entity for whose benefit" the transfer was made where the option was given months after the transfer and there is no allegation that "owner" specifically owns the entity.

[23] Adv. Doc. No. 109 at ¶¶ 67, 68, 70, 118, 119, 126, 300, 337, 397, 400, 401; Adv. Doc. No. 289 at ¶¶ 1252, 1253, 1254, 1379, 1380, 1393, 1394, 1395, 1535, 1536, 1537.

[24] For instance, the Probate Estates alleged that FLTCH, THI Baltimore, Forman, Grunstein, and Schron transferred THI's and THM's assets to themselves for less than reasonably equivalent value. Adv. Doc. No. at ¶¶ 1250, 1251.

[25] Adv. Doc. No. 109 at ¶¶ 892, 893. The Probate Estates also claimed that FLTCH, Forman, Grunstein, and Schron improperly used FLTCI's corporate form and dominated and controlled the entity. Adv. Doc. No. 289 at ¶¶ 1235, 1236.

For starters, the Court rejected the allegations that Forman and Grunstein were acting as Schron's agents when acting to further the bust-out scheme because those allegations were contradicted by other allegations in the complaint.[26] Specifically, the Probate Estates incorporated by reference the complaint Schron filed against Forman and Grunstein for breach of fiduciary duty and, in particular, allegations that Forman and Grunstein sought to seize THI Baltimore's assets for themselves while purporting to act as Schron's agents.[27] As for the conclusory allegations, Judge Merryday summed up the pleading deficiency best in a related case: "[T]he pertinent absence of the identity of the particular actors is wholly disabling to the disinterested reader."[28] Given the fact that the Plaintiffs had two attempts to plead their claims against Schron with the benefit of almost complete discovery, the Court determined dismissal of the claims against Schron should be with prejudice.[29]

Three other Defendants—General Electric Capital Corporation, Ventas Inc. and Ventas Realty—were dismissed at the summary judgment stage.[30] The Court then went to trial on claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, successor liability, fraudulent transfer, and conspiracy to commit

---

[26] *Fundamental Long Term Care, Inc.*, 507 B.R. at 379, 381; *Fundamental Long Term Care, Inc.*, 512 B.R. at 695-96.

[27] Adv. Doc. No. 109 at ¶¶ 402-10.

[28] *Jackson-Platts v. McGraw-Hill Cos., Inc.*, 2013 WL 6440203 (M.D. Fla. 2013).

[29] *In re Fundamental Long Term Care, Inc.*, 512 B.R. at 707.

[30] Adv. Doc. Nos. 907 & 908.

Case 8:13-ap-00893-MGW   Doc 1213   Filed 08/31/16   Page 9 of 15

fraudulent transfer against the GTCR Group, THI Holdings, Jannotta, FLTCH, FAS, THI Baltimore, Forman, and Grunstein.[31] After a tentative ruling in favor of the GTCR Group, THI Holdings, and Jannotta and (potentially) against FLTCH, FAS, THI Baltimore, Forman, and Grunstein, all of the parties except for Schron eventually settled.

On November 4, 2015, more than sixteen months after the Court dismissed the Probate Estates' claims against him, Schron requested the Court entered a final judgment in his favor in order to trigger the time period for the Probate Estates to appeal the dismissal order and to permit Schron to file a motion to tax costs.[32] That same day, the Court's law clerk e-mailed counsel for the remaining parties and asked them to e-mail any objections to Schron's proposed final judgment.[33] In response, the Probate Estates' counsel e-mailed that he objected to the proposed judgment primarily based on alleged newly discovered evidence.[34]

One of the items of newly discovered evidence referenced in the objection was the transcript of a deposition of Harry Grunstein, which the Probate Estates say they received as part of belated discovery on September 8, 2014—sixteen months before

---

[31] After the Court dismissed the claims set forth in the second amended complaint, the Probate Estates and Trustee filed a restated second amended complaint that included only the counts that remained pending after the Court's rulings on the various motions to dismiss. Adv. No. 13-ap-893, Adv. Doc. No. 620.

[32] Adv. Doc. No. 1208-1 at 9.

[33] *Id.* at 5.

[34] *Id.* at 3-4.

9

they objected to the proposed final judgment.[35] At the time, the Probate Estates claimed it would be inappropriate to enter final judgment because the Grunstein deposition, which was not attached to the Probate Estates' objection, purportedly showed that Schron tasked Grunstein with cleaning up a mess of negligence actions against nursing homes that THI Baltimore acquired three years before the alleged bust-out. The Court overruled the Probate Estates' objection and entered a final judgment in Schron's favor on December 16, 2015.

On appeal, the Probate Estates asked the district court to supplement the record with the e-mail exchange between the Court's law clerk and counsel, as well as the Grunstein deposition transcript. The district court determined that this Court is the appropriate forum to decide whether the Grunstein deposition transcript should be included in the record since this Court "knows best what was before it and what it considered in making its ruling." Having been presented with the issue,[36] the Court concludes it is appropriate to supplement the record with the e-mail communications with the Court's law clerk but not the Grunstein deposition transcript.

## Conclusions of Law

The Court's authority to supplement the record on appeal is set forth in Federal Rule of Bankruptcy Procedure 8009.[37] Under Rule 8009, this Court may

---

[35] *Id.* at 3.

[36] Adv. Doc. Nos. 1211 & 1212.

[37] Fed. R. Bankr. P. 8009(e)(2).

10

supplement the record on appeal—either before or after it has been sent to the district court—"[i]f anything material to either party is omitted from or misstated in the record by error or accident."[38] The Court is aware of authority for the proposition that matters not considered by the trial court may be included in the record on appeal for limited purposes.[39] But that appears to be a decision for the appellate court. For trial courts, "the touchstone for the designation of matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the order or judgment appealed from."[40]

Here, the Court never considered the Grunstein deposition transcript. For one thing, the Probate Estates simply referenced—but did not attach—the deposition transcript in their e-mail.[41] So the Court never even saw the transcript in overruling the Probate Estates' objection. As it turns out, excerpts of the transcript were attached to a motion to compel discovery from FAS that the Chapter 7 Trustee filed

---

[38] *Id.* The Court has serious doubts about the Grunstein transcript's materiality. Although the transcript is somewhat ambiguous, it can be read to suggest that Schron put Grunstein in charge of thwarting negligence claims against Integrated Health Services, the bankrupt entity whose assets were sold to Abe Briarwood and leased to THI Baltimore three years before the bust-out scheme. There are two problems with that evidence. First, it does not cure the Probate Estates' inability to allege that Schron participated in or personally benefited from the transfer of THMI's assets to FLTCH, which was fatal to their claims. Second, that evidence is merely cumulative since the Probate Estates' initial complaint contains a number of irrelevant allegations regarding Abe Briarwood's acquisition of Integrated Health Services' assets, including an allegation that Schron retained the negligence claims against Integrated Health Services and embarked on a scheme to thwart them. Adv. Doc. No. 109 at ¶¶ 119, 121, 123, 137.

[39] *In re Ames Dept. Stores, Inc.*, 320 B.R. 518, 522 n.8 (Bankr. S.D.N.Y. 2005).

[40] *Id.* at 522.

[41] Adv. Doc. No. 1208-1.

in this case.[42] But the Court did not learn of that fact until it reviewed the Probate

Estates' motion to supplement the record. In their motion, the Probate Estates

contend this Court somehow deprived them of an opportunity to file the transcript.

Not so. For starters, the Court never prohibited the parties from filing

anything in opposition to Schron's request for a final judgment. The Court simply

asked the parties to e-mail their objections for expediency. Besides, nothing

prevented the Probate Estates from attaching the transcript to their e-mail objection

so the Court could consider it. Moreover, although the Probate Estates e-mailed their

objection to the proposed final judgment on November 6, 2015, the Court did not

overrule the Probate Estates' objection and enter a final judgment until after the issue

was discussed at a December 16, 2015 status conference.[43] Nothing prevented the

Probate Estates from filing the transcript in the forty-one days between their initial

objection and the December 16 status conference.

Even assuming the Probate Estates had attached the deposition transcript to

their objection, the Court would not have considered it. The Court is unaware of any

authority for the proposition that a court should not enter a final judgment where all

claims against one defendant have been dismissed with prejudice simply because the

plaintiff has discovered new evidence. The proper procedural mechanism for raising

newly discovered evidence here would have been a Rule 60(b) motion.

---

[42] Adv. Doc. No. 878.

[43] Adv. Doc. No. 1178 at 22-27.

The Court could not have treated the Probate Estates' objection as a Rule 60(b) motion because it would have been untimely. The Probate Estates could have sought relief from the order dismissing the claims against Schron with prejudice under Rule 60(b) based on newly discovered evidence. But Rule 60 requires motions for relief from an order to be filed within a reasonable time but in no case more than one year after the order.[44] The dismissal order here was entered on June 26, 2014. But, despite the fact that the Probate Estates became aware of the Grunstein deposition transcript less than three months later, it waited until November 6, 2015—well more than a year after the dismissal order—to raise their newly discovered evidence argument. The Probate Estates, of course, could have sought relief from the final judgment once it was entered on December 16, 2015, but for reasons that are not clear to the Court, they chose not to do so.[45]

## Conclusion

In the end, the Probate Estates' motion to supplement the record on appeal appears to be an end run around Rule 60(b).[46] The proper mechanism for putting the Grunstein deposition transcript before the Court would have been to seek relief under Rule 60(b). But despite receiving the Grunstein deposition transcript less than

---

[44] Fed. R. Civ. P. 60(c)(1).

[45] Based on the Court's reading of Rule 60(b), the Probate Estates could have sought relief from the final judgment, in addition to the dismissal order.

[46] Although the filing of a notice of appeal generally divests a bankruptcy court of jurisdiction, the Court could still issue an indicative ruling—allowing the Court to defer ruling on a Rule 60(b) motion, deny it, or state that the Rule 60(b) motion should be granted or raises a substantial issue— under Rule 8008. Fed. R. Bankr. P. 8008(a).

three months after this Court dismissed the claims against Schron, the Probate
Estates waited more than sixteen months before raising any argument based on
newly discovered evidence and ultimately chose not to seek relief from the final
judgment on that basis. The Probate Estates would only be able to supplement the
record with the Grunstein deposition transcript had this Court previously considered
it. Because the Probate Estates failed to attach the transcript to their objection, and
the Court was otherwise unaware that excerpts of it were in the record, the Court
never considered the transcript in overruling the Probate Estates' objection to entry
of final judgment in Schron's favor.

Accordingly, it is

**ORDERED**:

1.      The Probate Estates' motion to supplement the record on appeal is
GRANTED, in part, and DENIED, in part.

2.      The e-mail exchange between the Court's law clerk and counsel for the
parties should be included in the record on appeal since the Court considered it. But
the Grunstein deposition transcript should not be included since the Court did not
consider it.

Attorney Rod Anderson is directed to serve a copy of this order on interested parties who are not
CM/ECF users and file a proof of service within 3 days of entry of the order.

**Steven A. Engel, Esq.**
  **Dechert LLP**
**Rod Anderson, Esq.**
**Joseph H. Varner III, Esq.**
  **Holland & Knight LLP**
*Counsel for Rubin Schron*

**Bennie Lazzara, Jr., Esq.**
**James Wilkes, Esq.**
  **Wilkes & McHugh PA**
**Harley E. Riedel, Esq.**
**Daniel R. Fogarty, Esq.**
  **Stichter Riedel Blain & Postler, P.A.**
*Counsel for the Estates of Juanita Jackson, Elvira Nunziata, Joseph Webb, Opal Lee Sasser,*
*Arlene Townsend, and Francina Spivery-Jones*